## MILLER *v.* MAYOR OF NEW YORK and Others.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF NEW YORK.

Argued November 6th, 1883.—Decided November 26th, 1883.

*Constitutional Law—Navigable Waters—Nuisance.*

1. A bridge erected over the East River, in the harbor of New York, in accordance with authority derived from Congress and from the legislature of New York, is a lawful structure which cannot be abated as a public nuisance.  So far as it obstructs navigation, it obstructs it under an authority which is empowered to permit the obstruction.
2. It is competent for Congress, having authorized the construction of a bridge of a given height, over a navigable water, to empower the secretary of war to determine whether the proposed structure will be a serious obstruction to navigation, and to authorize changes in the plan of the proposed structure.
3. When the head of an executive department is required by law to give information on any subject to a citizen, he may ordinarily do this through subordinate officers in his department.
4. The navigable waters of the United States include such as are navigable in fact, and which, by themselves or their connections, form a continuous channel for commerce with foreign countries or among the States : Over these Congress has control by virtue of the power vested in it to regulate commerce with foreign nations and among the several States.
5. The former cases, in which the court has considered the power of Congress to authorize the construction of bridges over navigable streams, referred to and considered.

Bill in equity to abate a nuisance.

On the 16th of April, 1867, the legislature of New York passed an act creating a corporation by the name of the New York Bridge Company, for the purpose of constructing and

maintaining a permanent bridge over the East River, between the cities of New York and Brooklyn. Laws of 1867, chapter 399. The act, among other things, authorized the corporation to acquire and hold so much real estate as might be necessary for the site of the bridge, and of all piers, abutments, walls, toll-houses, and other structures proper to it, and for the opening of suitable avenues of approach, but no land under water beyond the pier lines established by law. It declared that the bridge at the middle of the river should not be at a less elevation than 130 feet above high tide, and should not be so constructed as to obstruct "the free and common navigation of the river;" that it should not obstruct any street it might cross, but span such street by an arch or suspended platform of suitable height to afford passage under it for all purposes of public travel and transportation; and that no street running on the line of the bridge should be closed without full compensation to the owners of the property upon it; and it designated the points of the commencement and termination of the bridge.

On the 20th of February, 1869, the legislature passed an act amending the act of incorporation and providing for the representation of the two cities of New York and Brooklyn in the board of directors of the bridge company, and directing that the company should proceed without delay to construct the bridge, authorizing it for that purpose to use and occupy so much of the lands under the water of the river, not exceeding a front on either side of 250 feet, nor extending beyond the pier lines, as might be necessary for the construction of the towers of the bridge.

By the act of March 3d, 1869, 15 Stat. 336, ch. 139, Congress authorized this work, and declared that when completed it should be

"A lawful structure and post road for the conveyance of the mails of the United States. Provided, That the said bridge shall be so constructed and built as not to obstruct, impair, or injuriously modify the navigation of the river; and in order to secure a compliance with these conditions the company, previous to commencing the construction of the bridge, shall submit to the secre-

tary of war a plan of the bridge, with a detailed map of the river at the proposed site of the bridge, and for the distance of a mile above and below the site, exhibiting the depths and currents at all points of the same, together with all other information touching said bridge and river as may be deemed requisite by the secretary of war to determine whether the said bridge, when built, will conform to the prescribed conditions of the act, not to obstruct, impair, or injuriously modify the navigation of the river.

"Sec. 2. And be it further enacted, That the secretary of war is hereby authorized and directed, upon receiving said plan and map and other information, and upon being satisfied that a bridge built on such plan, and at said locality, will conform to the prescribed conditions of this act, not to obstruct, impair, or injuriously modify the navigation of said river, to notify the said company that he approves the same, and upon receiving such notification the said company may proceed to the erection of said bridge, conforming strictly to the approved plan and location. But until the secretary of war approve the plan and location of said bridge, and notify said company of the same in writing, the bridge shall not be built or commenced ; and should any change be made in the plan of the bridge during the progress of the work thereon, such change shall be subject likewise to the approval of the secretary of war."

The company complied with the provisions requiring them to submit plans to the secretary of war. A commission, consisting of three officers of the engineer corps, was appointed by the secretary of war to examine these plans. Their report was submitted to the chief of the corps, who thereupon addressed the following letter to the secretary of war :

"Office of the Chief Engineer,
"Washington, D. C., *May* 31*st*, 1869.

"Sir : The report, with accompanying papers, of the commission constituted by Special Order No. 72, from the adjutant-general's office, to examine and report upon the bridge proposed to be built between the cities of New York and Brooklyn, is herewith respectfully submitted to the secretary of war.

"After an examination of them and a careful consideration of the subject, the conclusion at which I have arrived is, that the

proposed bridge, if built subject to the conditions recommended by the commission, with the prescribed height in the middle of one hundred and thirty feet above mean high water of spring tides, will conform to the requirements of the act of Congress, 'not to obstruct, impair or injuriously modify the navigation of the river ; ' and I recommend to the secretary of war approval of the same. The phrase in the act of Congress, 'not to obstruct, impair, or injuriously modify the navigation of the river,' was prepared by myself, and with reference to the meaning attached to those words by the best authorities, and they were, I believe, used in the act with that understanding of them.. I would further recommend that the bridge company be furnished with a copy of the report of the commission.

"Very respectfully, your obedient servant.

"A. A. HUMPHREYS,

"*Brigadier-General and Chief of Engineers.*

"Hon. JOHN A. RAWLINS,

"*Secretary of War.*" .   .

The secretary of war returned this letter and the accompanying papers to the chief of engineers with this indorsement thereon : .

"WAR DEPARTMENT, *June* 19th, 1869.

"Respectfully returned to the chief of engineers, whose views and recommendations, as well as those of the commission herein referred to, are concurred in and approved, provided, that the height of the centre of the main span of the bridge shall not be less than 135 feet in the clear at mean high water of the spring tides ; and provided further, that the structure shall conform in all other respects to the conditions recommended by the commission.

"The chief of engineers will furnish the bridge company with a copy of the act establishing the bridge, a copy of the report of the commission and of this report, and will notify the company that the plan and location of the bridge are approved, subject to the conditions herein imposed. ·

"(Signed)        "JNO. A. RAWLINS,

·"WAR DEP., *June* 19*th*, 1869.        *Secretary of War.*"

Thereupon the chief of engineers addressed the following letter to the president of the bridge company :

Statement of Facts.

"OFFICE OF THE CHIEF OF ENGINEERS,
"WASHINGTON, D. C., *June* 21, 1869.
"HON. HENRY C. MURPHY,
"*President New York Bridge Company, Brooklyn, N. Y.:*
"SIR: I am directed by the secretary of war to inform the New York Bridge Company that he approves the plan and location of the East River Bridge as reported by the company to the commission instituted by orders from the war department, provided the bridge conform to the following conditions, viz. :

"First. That the centre of the main span shall, under no conditions of temperature or load, be less than one hundred and thirty-five feet in the clear above mean high water of spring tides, as established by the United States Coast Survey.

"Second. That the dimensions and coefficients of stability of the various parts of the structure shall not be reduced below those represented in the papers submitted to the commission by the company or its agents.

"Third. That no portion of the grillage or enrockments of the pier or tower foundations above the natural river-bed shall project beyond the pier lines, as established by the laws of the State of New York.

"Fourth. That no guys or stays shall ever be attached to the main span of the bridge, which shall hang below the bottom chords thereof.

"These considerations must be strictly adhered to in building the bridge.

"I am also instructed by the secretary of war to furnish the bridge company copies of the act of Congress establishing the bridge, of the report of the commission, and of the report of the chief of engineers, all of which are enclosed herewith.

"Very respectfully, your obedient servant,
"A. A. HUMPHREYS,
"*Brig. Gen. and Chief of Engineers.*"

The bridge was built in substantial compliance with these requirements; and the requirements of the legislature of New York in the several acts relating to the bridge have all been substantially complied with, and the bridge has been completed and is now in public use.

The appellant is a lessee of warehouses on the East River

above the bridge. After the building of the bridge was far advanced, and over $6,000,000 had been expended upon it, but before completion, he began this suit in the court below, on behalf of himself and others similarly situated, setting forth that the projected bridge would seriously impair and obstruct the navigation of the East River, and praying to have it adjudged to be a public nuisance, built without lawful authority, and the defendants in the suit enjoined from completing and maintaining it. Judgment being given against him in the court below, this appeal was taken.

*Mr. William H. Arnoux* for the appellant. I. The suit is brought in the federal court by reason of the inherent jurisdiction which it possesses over the subject-matter. *The Passaic Bridge,* 3 Wall. 789; see *Pindar* v. *Wadsworth,* 2 East, 154. The special injury to the complainant resulting from the construction of the bridge gives him a standing in a court of equity, to have the work enjoined and declared a nuisance. An individual receiving special damage from a public nuisance may maintain an action on the case for it as if it were a private nuisance. *Wheeling Bridge Case,* 13 How. 564; *State* v. *Dibble,* 4 N. C. 107; *United States* v. *New Bedford Bridge,* 1 Woodb. & Min. 401; *Rose* v. *Miles,* 4 M. & S. 101; *Att'y-Gen.* v. *Birmingham,* 4 Kay & J. 528; *Broadbent* v. *Imperial Gas Co.,* 7 De G., M. & G. 436; *Cary* v. *Brooks,* 1 Hill (S. C.), 365; *Corning* v. *Lowerer,* 6 Johns. Ch. 439; *Crowder* v. *Tinkler,* 19 Ves. 618, approved in *Georgetown* v. *Alexandria Canal Co.,* 12 Pet. 91; *O'Brien* v. *Norwich, &c., R. R.,* 17 Conn. 371; *Smith* v. *Boslin,* 7 Cush. 254, etc. This right of action of complainant is not prejudiced by reason of any delay. Lapse of time does not affect the right to abate a nuisance. *Renwick* v. *Morris,* 3 Hill (N. Y.) 621; *S. C.* aff'd, 7 Hill, 575; *Folker* v. *Chad,* 3 Doug. 340; *Scheetz's Appeal,* 35 Penn. 88; Russell on Crimes (Ed. 1876), 274; *Mills* v. *Hall,* 9 Wend. 315; Angell on Tide Waters, 116. II. As a fact the bridge does obstruct navigation. The people have the *jus publicum* to all navigable waters, which is paramount to all other rights therein. The law contemplated that the secretary of war should act with reference

to this right.   III. In construing the act conferring the power on the secretary, it is to be remembered that public grants are to be construed strictly.  *Bridge Company* v. *Hoboken Company*, 13 Beasley (N. J.) 81 ; *S. C.* ib. 503 ; and that nothing passes by legislative grant unless it is contained in express words, and that if a proviso is repugnant to the grant the grant fails.   IV. The power conferred upon the secretary of war by the act of Congress in question, was not to finally determine whether the bridge, as then proposed to be built, would obstruct, impair or injuriously modify the navigation of the East River, but it was to authorize him to grant permission for the construction of the bridge, leaving to the proper tribunals the determination of the fact whether such bridge was an obstruction.   V. The Congress of the United States had no constitutional power or authority to erect the secretary of war, or any other official member of the executive, into a legal tribunal to determine the force and effect of any statute passed by Congress.   Under the Constitution, such judicial determination must be confined to the judiciary.  *Marbury* v. *Madison*, 1 Cranch, 137 ; *Decatur* v. *Paulding*, 14 Pet. 497.   VI. The only authority conferred upon the secretary of war by the act of Congress in question to approve the bridge was predicated upon the prescribed conditions, that the said bridge should be so constructed and built as not to obstruct, impair, or injuriously modify the navigation of the East River, and that he should be satisfied that the said bridge would conform to the prescribed conditions.   And as the proofs show that the secretary of war was satisfied that the bridge, as then proposed to be and now is constructed, would not conform to the prescribed conditions, he had no power whatever in the premises to notify the bridge company that he approved the same, and such notification, if it had been given, would have been utterly null and void.   VII. The condition precedent imposed by the act before the bridge could be constructed has never been complied with.   The secretary of war could not devolve his duties upon a subordinate.  *Lyon* v. *Jerome*, 26 Wend. 485 ; *Board of Excise* v. *Riker*, 35 N. Y. 154.

*Mr. Joseph H. Choate* for the appellees.

MR. JUSTICE FIELD delivered the opinion of the court.

This suit was commenced in May, 1876, to restrain the erection of the suspension bridge, then under construction, over East River, in the State of New York, between the cities of New York and Brooklyn, at the height of 135 feet above the river at high-water mark, which was the proposed elevation of the structure. As the bridge has since been completed, if the plaintiff can make good his contention, and establish that when he filed his bill he was entitled to the relief prayed, he may claim that the bridge shall be raised to a greater elevation, or be entirely abated. He is the lessee of certain warehouses on the banks of the river above the point of the proposed crossing of the bridge, and he states that he brings the suit on behalf of himself and of all others similarly situated. No one, however, has united with him in its prosecution. He stands alone as complainant, and alleges that the bridge, if erected as projected and intended at the height designated, would be built without lawful power and authority; that it would be a nuisance, and obstruct, impair, and injuriously modify the navigation of the river, and might seriously and prejudically affect the commerce of the port of New York; that merchant vessels from the New England States and British Provinces, and from ports south of New York, and vessels engaged in foreign commerce, pass and repass on the river the intended location of the bridge; that the masts of a large proportion of these vessels exceed 135 feet in height; and that the expense to them of striking parts of their masts in passing under the bridge, if built as proposed, with the detention and additional towage rendered necessary, would be so great as to destroy his warehouse business, and be a private and irreparable injury to him, for which an action at law would afford no adequate redress. He accordingly prays an adjudication of the court upon the character and effect of the proposed bridge in conformity with these allegations, and an injunction restraining the further prosecution of the work of building it at the height of 135 feet above mean high water, or at any other height that would obstruct, impair, or injuriously modify the navigation of the river.

The court below did not find in the allegations of a possible

loss to the plaintiff in his warehouse business, or in the proofs offered to sustain them, sufficient ground to restrain the completion of the work. It dismissed his complaint as being without substantial merit.

We approve of its action and decree. The erection of the bridge at the elevation proposed was authorized by the action of both the State and federal governments. It would, therefore, when completed, be a lawful structure. If, as now completed, it obstructs in any respect the navigation of the river, it does so merely to an extent permitted by the only authorities which could act upon the subject. And the injury then apprehended and alleged by the plaintiff, and now sustained, is only such as is common to all persons engaged in commerce on the river, and doing business on its banks, and therefore not the subject of judicial cognizance. These conclusions will clearly appear by a reference to the legislation under which the work was commenced and prosecuted.

[The learned justice then reviewed the facts which are above set forth, and continued :]

It is contended by the plaintiff with much earnestness that the approval of the secretary of war of the plan and location of the bridge was not conclusive as to its character and effect upon the navigation of the river, and that it was still open to him to show that, if constructed as proposed, it would be an obstruction to such navigation, as fully as though such approval had not been had. It is argued that Congress could not give any such effect to the action of the secretary, it being judicial in its character. There is in this position a misapprehension of the purport of the act. By submitting the matter to the secretary, Congress did not abdicate any of its authority to determine what should or should not be deemed an obstruction to the navigation of the river. It simply declared that, upon a certain fact being established, the bridge should be deemed a lawful structure, and employed the secretary of war as an agent to ascertain that fact. Having power to regulate commerce with foreign nations and among the several States, and navigation being a branch of that commerce, it has the control of all navigable waters between the States, or con-

necting with the ocean, so as to preserve and protect their free navigation.    Its power, therefore, to determine what shall not be deemed, so far as that commerce is concerned, an obstruction, is necessarily paramount and conclusive.    It may in direct terms declare absolutely, or on conditions, that a bridge of a particular height shall not be deemed such an obstruction; and, in the latter case, make its declaration take effect when those conditions are complied with.    The act in question, in requiring the approval of the secretary before the construction of the bridge was permitted, was not essentially different from a great mass of legislation directing certain measures to be taken upon the happening of particular contingencies or the ascertainment of particular information.    The execution of a vast number of measures authorized by Congress, and carried out under the direction of heads of departments, would be defeated if such were not the case.    The efficiency of an act as a declaration of legislative will must, of course, come from Congress, but the ascertainment of the contingency upon which the act shall take effect may be left to such agencies as it may designate.    *South Carolina* v. *Georgia*, 93 U. S. 13.

It is also objected that the notice given by the chief engineer to the company was not a compliance with the requirement that notification should be given by the secretary ; but there is no force in the objection.    When a secretary of the government is required to give information on any subject, he may act, and generally does act, through officers under him.  He is not expected to make over his own signature all the communications required from the department of which he is the head. It would be impracticable for him to do so.    The official communication is deemed made by him when it is made under his sanction and direction.

The bridge being constructed in accordance with the legislation of both the State and federal governments must be deemed a lawful structure.    It cannot, after such legislation, be treated as a public nuisance; and however much it may interfere with the public right of navigation in the East River, and thereby affect the profits or business of private persons, it cannot, on that ground, be the subject of complaint before the

courts.   The plaintiff is not deprived of his property nor of the enjoyment of it; nor does he from that cause suffer any damage different in character from the rest of the public.   He alleges that his business of a warehouse-keeper on the banks of the river above the bridge will be in some degree lessened by the delay attending the passage under it of vessels with high masts.   The inconvenience and possible loss of business from this cause are not different from that which others on the banks of the river above the bridge may suffer.   Every public improvement, whilst adding to the convenience of the people at large, affects more or less injuriously the interests of some.   A new channel of commerce opened, turning trade into it from other courses, may affect the business and interests of persons who live on the old routes.   A new mode of transportation may render of little value old conveyances.   Every railway in a new country interferes with the business of stage coaches and side-way taverns; and it would not be more absurd for their owners to complain of and object to its construction than for parties on the banks of the East River to complain of and object to the improvement which connects the two great cities on the harbor of New York.

Several cases have been before this court relating to bridges over navigable waters of the United States, in which questions were raised as to the authority by which the bridges could be constructed, the extent to which they could be permitted to obstruct the free navigation of the waters, and the right of private parties to interfere with their construction or continuance.   In these cases all the questions presented in the case at bar have been considered and determined, and what we hereafter say in this opinion will be little more than a condensation of what was there declared.   The power vested in Congress to regulate commerce with foreign nations and among the several States includes the control of the navigable waters of the United States so far as may be necessary to insure their free navigation; and by "navigable waters of the United States" are meant such as are navigable in fact, and which by themselves or their connection with other waters form a continuous channel for commerce with foreign countries or among the States.   *The*

*Daniel Ball,* 10 Wall. 557.    East River is such a navigable water.    It enters the harbor of New York and connects it with Long Island Sound.    Whatever, therefore, may be necessary to preserve or improve its navigation the general government may direct; and to that end it can determine what shall and what shall not be deemed an interference with or an obstruction to such navigation.

In the Wheeling Bridge case, a bridge erected over the Ohio River at Wheeling, under an act of the legislature of Virginia, which prevented the passage of steamboats with high chimneys, was judged to be an unlawful structure; and the court ordered that it should be raised so as to afford a free passage to the steamers, or that some other plan should be adopted, by a day designated, which would relieve the navigation from the obstruction, or that the bridge should be abated.    Congress thereupon interfered and declared the bridge, as it was built at its existing elevation, to be a lawful structure.    The court then held that the objection to the bridge as an obstruction to the navigation of the river was removed; that although it might still be an obstruction in fact, it was not so in contemplation of law, and the decree of the court for the abatement of the bridge could not be enforced.    "There was no longer," said the court, "any interference with the enjoyment of the public right, inconsistent with the law, no more than there would be where the plaintiff himself had consented to it after the rendition of the decree."    For its interference with the public use of the stream no individual could complain, as the power which could control and regulate that use had made the structure creating the interference a lawful one.    18 How. 430.

The case of *Gilman* v. *Philadelphia,* 3 Wall. 713, is much stronger than the Wheeling Bridge case, and is conclusive against the pretensions of the plaintiff.    It there appeared that a bridge was about to be built over the Schuylkill River, at Chestnut street, in the city of Philadelphia, under the authority of an act of the legislature of Pennsylvania, when a party owning valuable coal wharves just above Chestnut street filed a bill to prevent its erection, alleging, as in the present case, that it would be an unlawful obstruction to the navigation of the

river and a public nuisance, inflicting upon him special damage, and claiming that he was entitled to be protected by an injunction to restrain the progress of the work, and to a decree of abatement should it be completed. The river was tide water and navigable to the wharves of the plaintiff by vessels drawing from 18 to 20 feet of water; and, for years, commerce to them had been carried on in all kinds of vessels. The bridge was to be only 30 feet high and without draws, and, of course, would cut off all ascent above it of vessels carrying masts. The city justified its intended action under the act of the legislature, setting up that the bridge was a necessity for public convenience to a large population residing on both sides of the stream. The court below dismissed the bill, and this court affirmed its decree, holding that as the river was wholly within her limits the State could authorize the construction of a bridge until Congress should by appropriate legislation interfere and assume control of the subject. In giving its opinion the court observed that it should not be forgotten that bridges which are connecting parts of turnpikes, streets, and railroads, are means of commercial transportation as well as navigable waters, and that the commerce over them may be greater than on the water; that it was for the municipal power to determine which should be preferred, and how far either should be made subservient to the other; and that this power could be exercised by the State until Congress interfered and took control of the matter. All the considerations which governed the decision of that case operate with equal, if not greater, force in the present case. In that case different parts of a city separated by a navigable water were connected by a bridge; in this case two cities thus separated are united. In that case the obstruction was complete and permanent to all vessels having masts; in this case the obstruction does not exist except to a limited class of vessels having high masts, and to them it is little more than a temporary inconvenience. In that case there was no approval of the structure by Congress, except such as may be inferred from its silence; in this case there is its direct authorization of the bridge after a careful consideration of its effect upon navigation by a commission of distinguished engineers. In that

case the bridge was held to be a lawful structure against all private parties, the federal government alone having the right to object to the obstruction to the navigation of the river which it might cause and to remove it; in this case that government does not object, but approves and sanctions the structure ; and the public benefit from it far outweighs any inconvenience arising from its interference with the navigation of the stream.

The recent case of *Escanaba Company* v. *Chicago*, 107 U. S. 678, follows the decision in *Gilman* v. *Philadelphia*, and is equally pointed and decisive.

In the light of these cases (and others of the same purport might be cited) the claim of the plaintiff that the construction of the great work which was to connect, and which has since connected, the cities of New York and Brooklyn should have been suspended, appears to be wholly without merit.

*The decree of the court below dismissing his bill is affirmed.*