UNITED STATES *v.* KEOKUK & H. BRIDGE CO.

*(District Court, S. D. Iowa, E. D.* February 7, 1891.)

1. BRIDGES—OBSTRUCTIONS TO NAVIGATION—REMOVAL BY SECRETARY OF WAR.
    A bridge having been built and maintained in accordance with the requirements of an act of congress, the secretary of war cannot declare it an obstruction to navigation, and require it to be changed, remodeled, or rebuilt, under the act of congress of August 11, 1888, (25 U. S. St. at Large, p. 424, §§ 9, 10,) providing that when he shall have reason to believe that any bridge is an obstruction to free navigation, or where there is difficulty in passing the draw-opening or raft-span, the secretary of war shall give notice requiring the bridge to be altered, so as to render navigation through or under it free, easy, and unobstructed, and that the owner of any such bridge shall be liable to a penalty for willfully failing to remove the bridge, or to cause the necessary alterations to be made.

2. SAME—NOTICE OF ALTERATIONS REQUIRED.
    Assuming that sections 9 and 10 are valid in any case, the notice given by the secretary of war must point out what alterations are required to be made; and a notice is not sufficient which requires the owners "to so alter said bridge as to render navigation through or under it free, easy, and unobstructed," though the notice contains a recital that "the bridge was an obstruction to free navigation by reason of its location, which at stages of water permitting navigation over the Des Moines rapids renders difficult the passage of boats, rafts, etc., through its west draw rest pier."

3. STATUTES—REPEAL—RELEASE OF PENALTIES.
    By the express provision of Rev. St. U. S. § 13, the repeal of a statute does not release any penalty, forfeiture, or liability incurred unless the repealing act so provides.

At Law. Action to recover penalties under provisions of sections 9 and 10 of the act of congress of August 11, 1888. On demurrer to petition.

*Lewis Miles*, U. S. Dist. Atty., for plaintiff.

*H. H. Trimble, W. J. Roberts*, and *James C. Davis*, for defendant.

SHIRAS, J. In the act of congress of August 11, 1888, (25 St. at Large, p. 424,) it is provided:

"Sec. 9. That whenever the secretary of war shall have good reason to believe that any railroad or other bridge now constructed, or which may be hereafter constructed, over any of the navigable water-ways of the United States is an obstruction to the free navigation of such waters by reason of insufficient height, width of span, or otherwise, or where there is difficulty in passing the draw-opening or the raft-span of such bridge by rafts, steam-boats, or other water-craft, it shall be the duty of said secretary to give notice to the persons or corporations owning or controlling said bridge to so alter the same as to render navigation through or under it free, easy, and unobstructed; and in giving such notice he shall prescribe in each case reasona-

ble time in which such alteration is to be made.   *   *   *   Sec. 10. That the owner or manager or managers of any railroad or other bridge obstructing the free navigation of any navigable water-way of the United States, who shall willfully fail or refuse to remove the same, or to cause the necessary alterations to be made in the same, so as to render navigation through or under it free, easy, and unobstructed to rafts, steam-boats, or other water-craft, after receiving notice to that effect from the secretary of war, and within the time prescribed by him, shall be subject to a fine, as penalty therefor, of five hundred dollars per month for the time he or they are in default."

In the petition filed in this cause it is alleged that the defendant corporation is the owner of a railroad and wagon bridge across the Mississippi river at Keokuk, Iowa.   That on or about the 31st day of December, 1888, the secretary of war, then having good reason to believe that said bridge was an obstruction to the free navigation of the river by reason of its location, which at stages of water permitting navigation over the Des Moines rapids rendered the passage of boats, rafts, etc., through its west draw rest pier difficult, gave due and legal notice to the said defendant to so alter said bridge as to render navigation through or under it free and unobstructed; said notice, so given defendant, being in the following form:

"WAR DEPARTMENT.

"WASHINGTON CITY, December 19, 1888.

"*To the Keokuk & Hamilton Bridge Company:*   Take notice that, whereas, the secretary of war has good reason to believe that the bridge across the Mississippi river at Keokuk is an obstruction to the free navigation of the said Mississippi river (which is one of the navigable waters of the United States) by reason of its location, which at stages of water permitting navigation over the Des Moines Rapids renders the passage of boats, rafts, etc., through its west draw rest pier difficult; and, whereas, to the 31st day of March, 1889, is a reasonable time in which to so alter the said bridge as to render navigation through or under it free, easy, and unobstructed: Now, therefore, in obedience to and by virtue of the ninth and tenth sections of an act of the congress of the United States entitled 'An act making appropriation for the construction, repair, and preservation of certain public works on rivers and harbors, and for other purposes,' which took effect August 11, 1888, I, Wm. C. Endicott, secretary of war, do hereby notify the said Keokuk & Hamilton Bridge Company to so alter the said bridge as to render navigation through or under it free, easy, and unobstructed, and prescribe that such alteration shall be made and completed on or before the 31st day of March, 1889.

"WM. C. ENDICOTT, Secretary of War."

—That the defendant failed and refused to cause the necessary alterations in said bridge to be made, so as to render navigation under it free and unobstructed for rafts, steam-boats, and other water-craft, which failure had continued for two months after the date fixed in the notice for the completion of said alteration, and in consequence thereof the defendant had become indebted in a penalty of $500 for each of said months, judgment being prayed in the sum of $1,000.

To this petition a demurrer is interposed on several grounds, the first being that the sections of the act of congress above cited are unconstitutional and void for the reason that the powers attempted to be thereby delegated to the secretary of war are exclusively lodged by the constitu-

tion in congress, and the same cannot be conferred upon any other body or person. That the power of congress to determine whether a bridge may be erected at a given place upon the navigable waters of the United States, and to prescribe the character thereof, is paramount, is settled by a long series of decisions of the supreme court. *Penna* v. *Bridge Co.*, 18 How. 421; *Gilman* v. *Philadelphia*, 3 Wall. 713; *In re Clinton Bridge*, 10 Wall. 454; *Bridge Co.* v. *U. S.*, 105 U. S. 470; *Miller* v. *Mayor, etc.*, 109 U. S. 385, 3 Sup. Ct. Rep. 228.

On part of defendant it is admitted that congress possesses this controlling authority, and could exercise it over the bridge owned by defendant; but it is contended that congress alone can exercise the power, and must do so as a legislative body, and that it cannot delegate this power to any other body or agency. The argument is that the bridge in question was originally built under the authority conferred by the act of congress of July 25, 1866, and that as built it conformed to the requirements then prescribed by congress, and was therefore a legal structure; that admitting that for any cause since arising the bridge may now be a greater obstruction to navigation than it formerly was, still it is for congress to determine whether the obstruction caused by it is sufficiently great as to require a change in the bridge, and, if so, to determine the nature and extent of such change. If it be true that the bridge in question when erected met all the requirements of the act of congress under the authority of which it was built, so that it was then a legal structure, it is difficult to evade the conclusion that it would require an act of congress to so change its *status* as to render the bridge company liable to punishment for maintaining it as it was originally constructed. Railroad and wagon bridges across the rivers of the country are agencies for the carrying on the public travel and commerce, the same as are navigable rivers; and it is therefore held that there must be in all cases a reasonable compromise between the two modes of travel, and that each may be required to submit to some obstruction and inconveniences, or, in an extreme case, when the interests of the public demand it, the one mode of commercial intercourse may be authorized, to the exclusion of the other. *Transportation Co.* v. *City of Chicago*, 107 U. S. 678, 2 Sup. Ct. Rep. 185; *Gilman* v. *Philadelphia*, 3 Wall. 713; *Miller* v. *Mayor, etc.*, 109 U. S. 385, 3 Sup. Ct. Rep. 228. If, therefore, in a given case, congress authorizes the construction of a railway bridge across a navigable river, and prescribes the location and mode of its construction, and the bridge is built in conformity therewith, it is certainly then a legal structure, and the obstruction caused by it to the navigation of the river must be deemed to be a burden lawfully imposed upon the free navigation of the river, of which no one can legally complain. If upon the completion of the bridge it becomes apparent that the same, owing to its location or mode of construction, or through some change in the channel of the river, is in reality an unreasonable obstruction to the navigation of the river, congress can require it to be remodeled, or to be entirely removed, if that be the only remedy. Until congress, however, requires it to be remodeled or removed, it certainly cannot be claimed that the bridge com-

pany is liable in any form of proceeding to be fined or punished for maintaining the bridge, or that the structure can be judicially declared a nuisance, and abatable as such.    The ruling of the supreme court in the *Wheeling, etc., Bridge Case*, 18 How. 421, is conclusive upon this proposition.    It follows, therefore, that if a bridge is constructed in accordance with the provisions of an act of congress authorizing its erection, it is, when thus constructed, a legal structure, and its *status* in this particular cannot be changed by judicial action, or by any power short of that which legalized it in the beginning.    It is certainly a defense to an action brought under section 10 of the act of August 11, 1888, to recover a fine for maintaining a bridge across a navigable river which is claimed to be in fact an obstruction to navigation, if it be shown that the bridge as constructed has been declared a legal structure by the congress of the United States, which may be done by showing, as in the *Case of the Wheeling, etc., Bridge*, that after its erection congress legalized it, or by showing that congress authorized its erection, and prescribed the location and form of the structure, and that it was built in accordance therewith.

The bridge-owner cannot be made liable to a fine or for damages simply because the bridge may be in fact an obstruction to the navigation of the river, but only in case the obstruction is illegal; and that cannot be predicated of a bridge built under the authority of, and in accordance with the requirements of, an act of congress.    Therefore, in the present case, if it be true that the bridge owned by the defendant company was built under the provisions of the act of congress of July 25, 1866, and when completed met the requirements of that act, so that it was then a legal structure, and it has not since been changed or become out of repair, but still continues to fulfill the requirements of the act under which it was constructed, then it must be shown, in order to subject the defendant company to liability for the maintenance of the bridge, that congress has in some proper mode required a change or alteration to be made therein, and that the company has failed or refused to comply with such requirement, and has thus rendered itself liable for the maintenance of what congress has thus declared would become an illegal structure, unless changed or remodeled in accordance with the requirements prescribed by congress.

On behalf of the United States it is claimed that congress has in a lawful manner declared that the bridge in question must be changed in certain particulars, through the action taken by the secretary of war, acting under the authority of section 9 of the act of August 11, 1888, and thus the question is presented, whether congress can delegate to the secretary of war, or any other body or person, the power to determine whether a bridge lawfully constructed is so much of an obstruction to navigation that the public interests require it to be remodeled or wholly removed.    It cannot now be questioned that congress can confer upon the secretary of war, or other agency, the duty of ascertaining whether a given structure conforms in fact to the requirements of the act of congress authorizing its erection, and to prescribe any changes that may be needed to conform it thereto; or congress may authorize the erection of

a bridge in accordance with the plans to be adopted by the secretary of war, as is held in the case of *Miller* v. *Mayor, etc.*, 109 U. S. 385, 3 Sup. Ct. Rep. 228, but still this does not meet the exact question now before the court.    Assume that a given bridge was built under an act of congress which prescribed the height thereof and the width of the spans, and that it conformed to the requirements of the act in these particulars, and the secretary of war should come to the conclusion that as thus built the bridge was an obstruction to the free navigation of the river, and should order the bridge company to increase its height and widen the spans, would such action be legal and binding upon the bridge company?    It seems to me that it would not.    It is for congress to decide how much of an obstruction to the free navigation of the river may be caused, and to prescribe the height of the bridge, the width of the span, and the like, which may be done by express declaration in the act of congress, or by providing that the bridge shall be built in accordance with the plans to be approved by the secretary of war or other competent person.    If the bridge when built conforms to the requirements imposed by congress, in whatever mode they are prescribed, then the bridge is a legal structure, and the obstruction caused by it to the navigation of the river is authorized.    Congress cannot, without abdicating its paramount and conclusive authority in the regulation of the commercial highways of the country, confer upon the secretary of war the right to declare that bridges lawfully erected are obstructions to free navigation, and must be remodeled or removed.    If section 9 of the act of 1888 had provided that it should be the duty of the secretary to ascertain whether the bridges named in the section were obstructions to navigation by reason of a failure to construct them in accordance with the requirements of the acts authorizing their erection, and, where such failure existed, to require the bridge company to conform to the requirements prescribed, exception could not be taken to such an enactment; but that is not the purport of the section.    It requires the secretary, in case he has good reason to believe that a bridge is an obstruction to the free navigation of a river by reason of insufficient height, width of span, or otherwise, or where there is difficulty in passing the draw-opening or the raft-span of the bridge, to give notice that the bridge must be so altered as to render navigation free and unobstructed.    There is not, probably, a railroad bridge across any of the navigable rivers of the country but creates some obstruction to the free navigation of the stream; nor is there a draw-bridge but that creates some difficulty in passing through the same.    If this section is construed literally, it would compel the secretary of war to require the alteration or possible removal of nearly every bridge in the country that spans a navigable river; and the only escape from this conclusion is to hold that it is intended only to require the alteration of bridges that cause an unreasonable obstruction to navigation, or create an unreasonable difficulty in passing the draws thereof, and that the secretary of war must determine in each case whether the bridge is or is not an unreasonable obstruction before he can require it to be altered.

Thus we are forced back to the conclusion that the section in question confers upon the secretary the duty of determining whether a given bridge is an unreasonable obstruction, which in turn involves the duty of determining how much of an obstruction the public interests require should be placed in the way of the free navigation of the river, which is a question which belongs to congress to determine, and which cannot be rightfully delegated to any subordinate authority or person. It certainly would not be claimed that congress could confer upon the secretary of war the power to determine when and where bridges should be built over the navigable rivers of the country, and to define, according to his own judgment, the character thereof, thus settling how much of a burden should be placed upon the navigation of the rivers; yet in what particular would there be a difference between the power to be exercised under such an act and that attempted to be conferred by section 9 of the act of 1888. In each case the secretary would be required to determine to what extent the free navigation of the river might be obstructed in the public interests, and in the one case to require the bridge to be built, and in the other to be remodeled or altered, so as not to cause an obstruction greater than that which the secretary had determined the navigation of the given river should be subjected to, and thus the judgment and decision of the secretary upon the question of the amount of obstruction that the public interests demand should be caused to the otherwise free navigation of the river would be substituted for the judgment and decision of congress upon this question. In effect, if the bridge owned by the defendant company is constructed in accordance with the requirements of the act of congress authorizing its erection, the case is presented in this form: Congress declared that the navigation of the Mississippi river should be subjected to so much of an obstruction as would be caused thereto by the erection of the bridge at the place and in the form provided for in the act, and, the bridge having been thus built, then congress, by the act of 1888, provided that if the secretary of war deems the bridge to be an obstruction, then it must be remodeled or removed; or, more briefly, a bridge which congress authorized to be built, and declared to be a legal structure, can be declared to be illegal, and therefore removable, by the secretary of war. If the language of section 9 of the act in question is sought to be applied in the case of a bridge erected under the authority of, and in accordance with the provisions of, an act of congress, so that, in effect, a structure which was a legalized obstruction to the navigation of a river is declared to be an obstruction by the secretary of war, and for that reason the bridge must be remodeled or rebuilt in whole or in part, then it must be held that the section was not intended to be applied to such cases, or if it was, then that the section is void for the reason that congress cannot confer the power upon the secretary of war of determining questions which congress alone can decide, nor can the secretary be empowered to determine when an act of congress authorizing and legalizing the erection and maintenance of a bridge over a navigable river shall cease to have that effect, and thus to declare a bridge to be an illegal obstruc-

tion to navigation which congress has declared is a legal obstruction. If it be true, then, and this opinion is based upon that assumption, that the bridge owned by the defendant company was built under the authority of, and in accordance with the requirements of, an act of congress, to-wit, of the act of July 25, 1866, and has since been maintained in accordance therewith, then it is held that the secretary of war does not, under section 9 of the act of August 11, 1888, possess the power to declare the bridge to be an obstruction to the navigation of the Mississippi river, and for that reason to require it to be changed, remodeled, or rebuilt, and the order made to that end is nugatory, and the defendant company cannot be held liable to a fine for failing to obey such order.

The next ground of demurrer is that, granting in a given case that the secretary of war might lawfully possess and exercise the power to require the owners of a bridge over a navigable river to change or alter the construction thereof, as provided for in section 9 of the act under consideration, nevertheless, to put the owner of the bridge in default, the notice given under the statute must point out or define in some mode what changes or alterations are required to be made. In considering this question regard must be had to the character of the statute sought to be enforced. The section of the act which is the basis of this proceeding is penal in its nature, and the action is to recover a penalty for an alleged violation of its provisions. It is a fundamental rule in regard to such statutes that to be enforceable they must be free from ambiguity and uncertainty; or, in other words, before the citizen can be punished for a failure to obey the statute, it must be made clear what he is required to do or to abstain from doing. If this was not the rule, then statutes could be so drawn as to prove traps, not only to the unwary, but even to those who might desire to obey the law, but had been innocently misled by the uncertainties caused by the ambiguous language of the statute. Now a statute may require obedience to some proper order to be made by a named person, body, or other authority, but in that case the order to which obedience is required must be sufficiently clear and certain to notify the person to whom it is addressed of what he is to do or not to do. In the present case, assuming that the secretary of war had the power to decide that the bridge owned by the defendant company was an obstruction to navigation, and must be altered or remodeled, was it enough for him to simply decide that it was an obstruction, and then to notify the defendant that the bridge must be remodeled without pointing out in what the obstruction to the navigation consisted, or what change or alteration was required to be made? It would seem that in some fair way the bridge company should be notified of what was required of it before it could be adjudged to be in default, and be subjected to a fine; or, in other words, the secretary should declare in what particular the bridge should be rebuilt, remodeled, or changed, so that the owner thereof could reasonably know what was expected of him. It certainly could not be permitted to the secretary, without any hearing afforded to the company, to declare that the bridge was an obstruction, and then to notify the company that the bridge must be altered

or remodeled, without pointing out either the character of the obstruction, or the changes deemed necessary to be made in order to meet the views of the secretary.     Unless properly notified of what was expected of the company, the latter might make many and costly changes in the bridge, and still be liable to punishment because it had failed to make the changes which the secretary had in mind, but had failed to declare or make known to the company.     Thus the company, under a general notice to alter its bridge, might at great expense increase the height thereof, and then be fined for not widening the span between the piers, or *vice versa.*     If the action taken by the secretary simply amounts to saying: "This bridge is an obstruction to navigation; alter it,"—it would seem clear that the bridge-owner cannot be charged with the duty of guessing at what is required, and be subjected to a fine by way of punishment because it failed to properly solve the riddle.     The notice given to the defendant company in this instance, after the recitals therein, reads as follows:

"I, Wm. C. Endicott, secretary of war, do hereby notify the said Keokuk & Hamilton Bridge Company to so alter the said bridge as to render navigation through or under it free, easy, and unobstructed, and prescribe that said alteration shall be made and completed on or before the 31st day of March, 1889."

This notice requires the bridge company to so alter the bridge as to render navigation under it free, easy, and unobstructed.     Literally construed, this would practically require the bridge to be wholly removed, for no bridge having a draw to be passed can exist without placing some obstruction in the way of the free navigation of the stream over which it rests.     From such a notice, how is it possible for the bridge company to ascertain what is required of it, except that it must leave the navigation of the river "free, easy, and unobstructed," which is impossible, so long as the structure remains resting on piers built in the river, with a draw for the passage of steam-boats and other like craft through it.     If it is said that such a notice must be construed to mean that the obstruction caused by the bridge must be reasonable, and that it must be altered so as to be only a reasonable obstruction, the difficulty still remains that no guide or direction is given to the company for determining how much of an obstruction would be deemed reasonable.     The notice does not require that the bridge shall be such a height, or of a given span between the piers, or that the draw shall be placed at a given point, or at a given angle to the current, nor is it declared that the bridge is an obstruction because of insufficient height, width of span, or otherwise, and hence the company is left wholly in the dark as to what is really required of it. Whose judgment is to determine whether the bridge is in fact an unreasonable obstruction?     If, under this notice, the company had expended thousands of dollars in remodeling the bridge, and it had then been sued because the navigation of the river was not free, easy, and unobstructed on account of the bridge, what criterion could be appealed to for determining whether the company had met or failed to meet the requirements of the notice served upon it?     If the notice itself had pointed

out specifically what was required of the company, then it might be shown that these requirements had or had not been complied with; but the notice, as served, gives no criterion for determining what was expected of the company, except that the navigation of the river must be left free, easy, and unobstructed; which requirement cannot be met except by wholly removing the bridge.

But it may be said that the difficulty sought to be remedied is sufficiently pointed out in the first clause of the notice which is as follows:

"Whereas, the secretary of war has good reason to believe that the bridge across the Mississippi river at Keokuk is an obstruction to the free navigation of the said Mississippi river, * * * by reason of its location, which at stages of water permitting navigation over the Des Moines rapids renders the passage of boats, rafts, etc., through its west draw rest pier difficult."

. This recital shows that in the judgment of the secretary of war the location of the bridge is an improper one; and, granting this to be the difficulty sought to be remedied, it still remains true that the notice does not point out any remedy to be applied, except in the removal of the bridge from its present location, which, in effect, means taking it down in whole or in part, and possibly rebuilding it in some other location.    If this be the real meaning of the notice, and such was the intent of the secretary of war, then we are again met with the question whether congress can confer upon any other body or person the power to determine whether the public interests demand that a bridge, located and built by express authority of congress, shall be removed or rebuilt at some other location. The situation is simply this:    The bridge was built under an act of congress which determined its location.    When built at the place it now occupies, it was a legal structure, and the navigation of the river was lawfully subjected to the burden thus imposed thereon, and the company could rely upon the act of congress authorizing its erection as a defense against any suit or proceeding against the company based upon the erection or maintenance of the bridge up to the date of the order issued by the secretary of war.    If the act of congress is not now a defense and protection to the company, it is because the order of the secretary has in effect declared the bridge to be an illegal obstruction, and this power cannot in such case be conferred upon the secretary of war.    Therefore, if the notice served upon the defendant company be construed to mean that the location of the bridge must be changed, such order would be nugatory for the reason stated; and if it be construed to mean that the company must so alter it as to leave the navigation of the river free and unobstructed, then the notice is so indefinite and uncertain that it cannot be held to impose any duty or obligation upon the bridge company.

It is argued on behalf of the United States that parties undertaking to build bridges across navigable rivers do so at their peril, and, if a given bridge is in fact an obstruction to free navigation, the secretary of war may be authorized to cause its removal, or require it to be so changed as not to prove an obstruction to navigation.    As to all bridges not built under proper state or federal authority this may be true.    It may be ad-

mitted that the free navigation of a river is not to be interfered with or obstructed by the building of a bridge over the same by any railroad or bridge company, or by any individual citizen acting without governmental authority; and therefore, as claimed, whoever undertakes, without specific authority, to erect a bridge over such a stream, does so at his peril, and if, when erected, it is in fact an obstruction, it may be removed for that reason.   Again, congress might determine that as to any given river or water-way the navigation thereof must be left wholly free and unobstructed, and might therefore empower the secretary of war to cause all bridges interfering with the free navigation to be removed, or to be so constructed as not to interfere therewith.   In such cases the legislative will is declared to be that the navigation of the river shall be left wholly free and unobstructed, and the secretary of war would only be charged with the duty of executing the legislative will in this particular, —a duty which must of necessity be intrusted to some executive agency. When, however, it becomes necessary to decide whether the public interests demand that the navigation of a river shall be subjected to some burden and obstruction in order that the other public highways of the country may be carried over the same by means of bridges, and to prescribe the nature and extent of the obstruction that may be caused to the navigation of the given water-way, there are presented legislative questions, the decision of which cannot be conferred upon any individual citizen or subordinate authority; and when congress has declared that the public interests require that the navigation of a river may be subjected to the obstruction caused by the erection of a bridge of a defined character at a fixed location, and the bridge is erected accordingly, and is thus legalized, no power short of congress acting in its legislative capacity can deprive the bridge-owner of the protection afforded him by the act of congress authorizing the building and maintenance of the bridge in the first instance.   If the action of the secretary of war in the present instance can be sustained, it would follow that he could have ordered the location of every bridge over a navigable river or water-way in the country to be changed, and thereby have rendered the owners thereof liable to fine for not removing the same, and, as a result, would also have rendered them liable to respond in damages to all parties who could show that they had suffered a detention in the navigation of the water-ways, and that, too, without an opportunity being given to the bridge-owner to be heard in defense of his rights.   It is apparent that it was quickly perceived that the act of 1888 was open to serious question, for in the act of September 19, 1890, sections 9 and 10 of the former act were amended by adding the word "unreasonable" before obstruction, and providing for a hearing being given to the bridge-owner before action is taken by the secretary, and also requiring the notice served upon the bridge-owner to specify the changes required to be made in the bridge. While these changes remove some of the objections existing under the former statute, it is still made the duty of the secretary to determine what is an unreasonable obstruction to navigation.   As the present case was brought before the passage of the amendatory statute, it is not nec-

essary to consider or determine whether the amended statute is or is not open to the same objection that is held fatal to the validity of the first statute.

It is, however, assigned as a further ground of demurrer that the act of 1890 in fact repeals that of 1888, and that consequently this proceeding must fall with the repeal of the act upon which it is based. There would be force in the point thus made were it not for the provision of section 13 of the Revised Statutes of the United States, which enacts that the repeal of a statute shall not have the effect to release or extinguish any penalty, forfeiture, or liability incurred, unless the repealing act shall so provide.

Upon the latter ground, the demurrer is overruled, but, upon the other grounds discussed in the opinion, it is sustained.