**SEWELL et al. v. ARUNDEL CORPORATION.**

Circuit Court of Appeals, Fifth Circuit.
July 5, 1927.

No. 5004.

1. **Navigable waters 7—Taxpayers held without standing to sue to abate nuisance from depositing material dredged from ship channel, under government contract (Act March 3, 1925 [43 Stat. 1186]).**

Taxpayers of city *held* without standing to prosecute action to sue to abate nuisance alleged to have resulted from depositing material excavated when dredging ship channel, in that it constituted an attempt to interfere with lawful and ordinary execution of contract made by authority of Congress (Act March 3, 1925 [43 Stat. 1186]) for dredging navigable waters.

2. **Navigable waters 19—Obstruction of navigable waters is "nuisance," and subject to abatement.**

An obstruction in navigable waters is a "nuisance," and may be abated in proper proceeding.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Nuisance.]

3. **Navigable waters 2—Congress has complete dominion over navigable waters, whether wholly within boundaries of state or otherwise.**

Congress has complete dominion of navigable waters of the United States, whether wholly within boundaries of the state or otherwise, and has authority to undertake and prosecute such work as may be thought necessary to improve their navigability, which power includes power to obstruct.

Appeal from the District Court of the United States for the Southern District of Florida; Rhydon M. Call and Lake Jones, Judges.

Suit by E. G. Sewell and others against the Arundel Corporation. Decree of dismissal, and plaintiffs appeal. Affirmed.

Frank Clark, of Miami, Fla. (Clark, Clark & Maiden, of Miami, Fla., on the brief), for appellants.

S. B. Jennings, of Jacksonville, Fla., for appellee.

Before WALKER, BRYAN, and FOSTER, Circuit Judges.

FOSTER, Circuit Judge. This suit was brought by appellants, five citizens and taxpayers of Miami, Fla., against appellee, a Maryland corporation, to enjoin the prosecution of certain work in the harbor of Miami. The bill is very lengthy, but, stated as briefly as possible, it alleges that appellee has a contract with the United States to dredge a ship channel in the harbor of Miami, 200 feet wide, to a depth of 25 feet; that the excavated material is deposited at a point in Biscayne Bay, in the harbor of Miami, about 2,000 feet east of Miami Bay Front Park; that this is being done pursuant to an agreement between appellee and the city officials of Miami for the purpose of building up an island approximately 2,100 feet wide by 8,000 feet in length.

The bill fulsomely describes the beauties of the Miami water front, the desirability of Miami as a tourist and residential city, and alleges the great value of the land and improvements adjacent to the water front. The bill further alleges that by virtue of a permit from the War Department it is the intention of the city authorities to build wharves, warehouses, a sewage disposal plant, and other objectionable structures on the proposed island, and to connect it with the city proper by a causeway; that the proposed island will be hideous, and destroy the beauty of the water front, and will increase the danger from storms; that it will be a menace to health, because of noxious odors emanating from offensive cargoes unloaded at the proposed wharves and by interfering with the proper disposal of sewage; and that, in consequence, the value of plaintiffs' and other property in the city will be greatly diminished.

The bill also alleges that the ownership of the land under the waters of Biscayne Bay is in the state of Florida as a trustee for the benefit of all her citizens; that the Legislature has attempted in 1925, by an act passed over the veto of the Governor (chapter 11616, Acts Extra Session 1925), to grant the submerged and partly submerged lands under Biscayne Bay to the city of Miami, for municipal purposes, but was without power and authority to do so; and that the Secretary of War was without authority to grant a permit to the city of Miami to build the proposed island, or to authorize the deposit of material where it is being made.

The bill prays for an injunction restraining appellee from depositing excavated material in Biscayne Bay and requiring it to carry same to sea for dumping.

The answer sets up that appellees are proceeding under a contract with the United States, through the Secretary of War, in the dredging of the channel; that the depositing of excavated material is being made strictly in conformity to the specifications made part of the contract; and that to carry it out to the open sea for dumping would increase the cost of the work to them at least $800,000.

Appellee denies any agreement with the city of Miami relative to the building of an island as alleged.

The case was tried on the bill and answer and certain affidavits, which it is unnecessary to set out, and a decree was entered dismissing the bill.

[1] It is not shown that appellee has any agreement with the city of Miami relative to the dumping of material or the construction of an island, except, perhaps, by inference. It clearly appears that appellee is proceeding with the execution of a contract for harbor improvement made with the United States by authority of Congress (Act March 3, 1925 [43 Stat. 1186]), and is doing the work according to specifications with the approval of the Chief of Engineers.

[2, 3] The suit is brought ostensibly to abate a nuisance. Undoubtedly an obstruction in navigable waters is a nuisance, and may be abated in a proper proceeding. However, it is well settled that Congress has complete dominion over the navigable waters of the United States, whether wholly within the boundaries of a state or otherwise, and has authority to undertake and prosecute such work as may be thought necessary to improve their navigability. This authority includes the power to obstruct, and when Congress gives consent to the creation of an obstruction to navigation it ceases to be a nuisance and the courts are powerless to interfere. Wisconsin v. Duluth, 96 U. S. 379, 24 L. Ed. 668; Pennsylvania v. Wheeling & Belmont Bridge Co., 18 How. 421, 15 L. Ed. 435.

We are not concerned in this case with the allegations of dire consequences expected to flow from the ultimate completion of the project. As to that the suit is premature, and proper parties are not before the court.

It is immaterial to a decision in this case whether the ownership of the submerged and partly submerged land in Biscayne Bay is still in the state of Florida or has passed by valid enactment to the city of Miami for municipal purposes. Wherever the title may be, it is subordinate to the paramount authority of Congress in directing harbor improvements.

Regardless of form, the case presents an attempt to interfere with the lawful and orderly execution of a contract made by authority of Congress, and appellants are without standing to prosecute it. If actionable damage accrues to appellants, that may be ascertained in a proper proceeding at the right time.

Affirmed.