**LEVINGSTON SHIPBUILDING COM-
PANY, Appellant,**

v.

**The Honorable Stephen AILES, Secretary
of the Army, et al., Appellees.**

**No. 22913.**

United States Court of Appeals
Fifth Circuit.

April 15, 1966.

Rehearing Denied June 17, 1966.

George W. Brown, Jr., Beaumont,
Tex., William C. Harvin, Houston, Tex.,
Baker, Botts, Shepherd & Coates, Hous-
ton, Tex., of counsel, for appellant.

Wm. Wayne Justice, U. S. Atty., Tyler,
Tex., Edwin L. Weisl, Jr., Asst. Atty.
Gen., Roger P. Marquis, A. Donald
Mileur, Attys., Dept. of Justice, Washing-
ton, D. C., Richard B. Hardee, Asst. U. S.
Atty., Tyler, Tex., David D. Hochstein,
Atty., Dept. of Justice, Washington, D.
C., for appellees.

Quentin Keith, Beaumont, Tex., amicus
curiæ.

Before HUTCHESON and GEWIN,
Circuit Judges, and WEST, District
Judge.

HUTCHESON, Circuit Judge:

By this suit Levingston Shipbuilding
Company seeks to eliminate or modify the
proposed fixed span bridge across the
Sabine-Neches Waterway at Port Arthur,
Texas. The district court dismissed the
suit and entered judgment accordingly.[1]
In complete agreement with this decision,
we affirm.

The material facts are neither complex
nor conflicting. Presently the Sabine-
Neches Waterway is spanned by a thirty-
five year old bascule-type bridge that is
inadequate for, and extremely hazardous
to, modern navigation. Additionally, the
Waterway is too shallow and too narrow
to accommodate the current heavy water
traffic. To rectify both inadequacies,
Congress in 1962 authorized and approved
the Sabine-Neches Waterway Project.[2]

1. 239 F.Supp. 775 (E.D.Tex.1965).

2. River and Harbor Act of 1962, 76 Stat.
1173, 1175.

In an effort to better not only navigability of the Waterway, but also passage for persons and vehicles over the Waterway, the Project calls for improvement of the Waterway, destruction of the old bridge, and construction of a new bridge. The Congressional authorization directs that the Project be carried out in accordance with the plans and recommendations in House Document No. 553. Pursuant to this authorization, a new bridge is now planned with a vertical clearance of 138 feet above mean low tide.

Levingston's dominant business is building and repairing off-shore drilling equipment. Its facilities are located upstream from the proposed new bridge. Many of the rigs constructed or repaired by Levingston exceed 138 feet in height, and therefore will not be able to pass under the new bridge. As the district court observed, the new bridge as planned will obstruct Levingston's established and potential use of the Waterway. Although Levingston did not make known its objections during the Congressional consideration of the Project, it did object during hearings on appropriations for the Project. Unable to obtain Congressional relief, Levingston brought this suit.

Levingston attacks the proposed new bridge on two grounds: first, that the bridge as planned is not within the Congressional authorization; and second, that if Congress authorized the bridge as planned, it did so in excess of its Constitutional powers. Further, Levingston argues that the defendants should be enjoined from proceeding with the Project until they obtain a valid compliance with the "hold and save" condition specified in House Document No. 553.[3] The defendants moved for dismissal, and this motion was carried with the case. A trial was then had on the merits. In a careful and thoughtful opinion, the district court considered and rejected each of Leving-

ston's arguments, and dismissed its suit. We approve and fully concur in the court's decision.

■ We need add very little to what the district court has already said. Taking Levingston's last argument first, we are in complete agreement with the court below that Levingston has no standing to insist on compliance with the "hold and save" condition. See Perkins v. Lukens Steel Co., 310 U.S. 113, 129, 60 S.Ct. 869, 84 L.Ed. 1108 (1940).

■ Regarding the new bridge, we agree that Congress authorized it as planned, and that this authorization is not unconstitutional. House Document No. 553 is replete with references to a proposed height of 138 feet. Simply reading this document, which Congress not only considered, but also specifically incorporated into its enactment,[4] compels the conclusion that Congress, on the basis of adequate information, authorized a bridge of the vertical height of 138 feet.

Nor can we find this authorization unconstitutional. The Congressional power to regulate commerce[5] comprehends the control of all navigable waters, and includes the construction of bridges over navigable waters. Undoubtedly, as determined by the district court, destruction of the old bridge and construction of the new bridge will aid and assist commerce, both on and over the Waterway. That some obstruction to particular uses of the Waterway will result does not render construction of the new bridge as planned unconstitutional. See United States v. Commodore Park, Inc., 324 U.S. 386, 65 S.Ct. 803, 89 L.Ed. 1017 (1945); Cardwell v. American River Bridge Co., 113 U.S. 205, 5 S.Ct. 423, 28 L.Ed. 959 (1885); Miller v. Mayor of City of New York, 109 U.S. 385, 3 S.Ct. 228, 27 L.Ed. 971 (1183); Gilman v. City of Philadelphia, 3 Wall. 713, 70 U.S. 713, 18 L.Ed.

---

3. House Document No. 553 requires various conditions of local cooperation; one such condition is that local interests (here, Jefferson County, Texas) agree "To hold and save the United States free from damages resulting from the project."

4. Note 2 supra.

5. U.S. Const. art. I, Sec. 8.

96 (1865); State of Pennsylvania v. Wheeling & Belmont Bridge Co., 18 How. 421, 59 U.S. 421, 15 L.Ed. 435 (1855); United States v. Ingram, 203 F.2d 91 (8th Cir. 1953), cert. denied, 345 U.S. 995, 73 S.Ct. 1136, 97 L.Ed. 1402 (1953); Sewell v. Arundel Corp., 20 F.2d 503 (5th Cir. 1927).

Affirmed.