[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: APPLICATION FOR TEMPORARY INJUNCTION
The plaintiffs request the court to temporarily enjoin the State of Connecticut from allowing motor vehicle traffic to use a newly rehabilitated bridge which has been constructed to carry motor vehicular traffic along Route 136 and across the Saugatuck River in Westport, Connecticut. Pending the outcome of this case, the plaintiffs want the swing portion of the bridge kept open so that small motor boats may at all times navigate past the bridge without hinderance [hindrance]. The State objects to the issuance of a temporary injunction. I have denied the plaintiffs' request for temporary relief for two reasons: (1) the federal government has exercised its paramount power in this field and has approved the bridge, and (2) the federal government has provided the plaintiffs with a regulatory process which accords them an adequate remedy at law.
The granting of a temporary injunction lies within the court's sound discretion. Covenant Radio Corp. v. Ten Eight Corp., 35 Conn. Sup. 1, 3-4 (1977). To secure temporary injunctive relief, the applicants must show clearly that protectable interests are at stake. They must also establish, to a reasonable certainty, that they will prevail subsequent to a final hearing on the application for a permanent injunction by showing both irreparable injury and lack of an adequate remedy at law. Id. at 3. Before discussing the issues raised by these requirements, a brief synopsis of the facts will be set forth.
The Route 136 bridge over the Saugatuck River was built in the 1860's and first rehabilitated in the 1890's. The bridge was constructed as a through-truss bridge. Motor vehicular traffic passed through the truss which supported the bridge deck. Of significance to this case is the fact that the beams which supported the bridge deck ran parallel to the shoreline. This design allowed many operators of small motor boats to pass under the bridge at high tide by scrunching between the floor beams. If larger boats needed to pass, a bridge tender would be CT Page 2990 called to the bridge. The tender would operate a mechanism which caused a portion of the bridge to swing on a pedestal into a position running parallel to the shore. The large boats would then pass through the open bridge.
By 1984, engineers employed by the Department of transportation of the State of Connecticut determined that the bridge did not meet current standards. Large vehicles, such as fire apparatus, could not use the bridge. Officials of the Department of Transportation and the Town of Westport considered replacing the bridge with various types of structures. Because many residents of Westport desired to preserve the swing bridge, the State and Town decided the bridge should be rehabilitated and remodeled. A girder-platform bridge was designed with the old truss affixed to the platform. The swing feature of the bridge was retained. The significance of the new design is that the girders which support the bridge deck run at right angles to the shoreline. Thus, boaters will no longer be able to scrunch between the floor beams while passing under the bridge.
In 1988, the State of Connecticut applied to the Commandant, United States Coast Guard, for permission to modify the swing bridge and to erect a detour bridge for use during construction. The federal government's approval was needed because the Saugatuck River is a navigable water. "The Congressional power to regulate commerce comprehends the control of all navigable waters, and includes the construction of bridges over navigable waters." Levingston Ship Building Co. v. Ailes, 358 F.2d 944, 945 (5th Cir. 1966). The consent of Congress to the construction, maintenance and operation of bridges and approaches thereto over navigable waters of the United States may be obtained in accordance with the provisions of the "General Bridge Act of 1946," as amended. See 33 U.S.C. § 525-533. The authority to implement this act has been delegated to the Commandant, United States Coast Guard. See49 C.F.R. § 1.46 (c). In April of 1990, the Commandant approved the State of Connecticut's permit application.
The extent of the federal government's control over navigable waters cannot be overstated. The government's preeminent power in this field has long been recognized by our courts. Early in the history of our nation the United States Supreme Court approved the extensive exercise of this power by Congress. Gibbons v. Ogden, 9 Wheat. 1 (1824). The "General Bridges Act of 1946" is but one example of the federal government's exercise of power in this field.
The Commandant authorized the state to modify the swing bridge and construct a temporary bridge in accordance with plans which the Commandant approved. The Commandant also set forth in CT Page 2991 the bridge permit conditions or directions as to when the temporary bridge shall be removed. The state and its contractor have recently completed the modification work. The state now wants to use the modified bridge for motor vehicle traffic and to remove the temporary bridge.
The plaintiffs, claiming the state has lowered the clearance between the swing bridge and the water, want to prohibit the state from using the bridge for motor vehicular traffic. They want the bridge kept open for boats and the temporary bridge maintained. Clearance is measured by the difference between "low steel" and mean high water. "Low steel" is defined by the United States Coast Guard as "the site of the lowest part of the super structure of the navigation span." (Exhibit No. 9, p. 16). The evidence shows that the modified bridge allows five more inches of clearance than the old bridge. The clearance, however, is approximately thirteen inches less when account is taken of the fact boaters may no longer scrunch between the old floor beams. The old beams, which had run parallel to the shore, were spaced fourteen feet apart and as a practical matter allowed small boat operators extra clearance. Despite this loss of clearance, the defendants have demonstrated they have built the bridge in accordance with the approved plan. "Such approval of the plan was tantamount to a declaration by the federal government that the bridge is not an unlawful structure so far as navigation is concerned. The federal government having declared it a lawful structure in navigable waters, no state authority or court can declare it unlawful . . . ." Milwaukee Western Fuel Co. v. City of Milwaukee. 139 N.W. 540, 543 (1913); see also Southern Oyster Shell Milling Corp. v. Transcontinental Gas Pipe Line Corp., 159 So.2d 542 (1964), cert. denied, 161 So.2d 282, 245 La. 815. "It is usually a defense to a suit to restrain an obstruction of navigable waters that the obstruction has been erected pursuant to legislative authority." 65 C.J.S. Navigable Waters 49(3) p. 817. Because this court does not have the power to modify the permit issued by the Commandant, United States Coast Guard, the court cannot issue a temporary injunction barring the use of the modified bridge and requiring the continued use of the temporary bridge.
The Code of Federal Regulations sets forth procedures which may be followed when a person believes a bridge over a navigable waterway of the United States is an unreasonable obstruction to navigation. See 33 C.F.R. § 116.01-116.230. These regulations allow for the filing of complaints, hearings, and the making of remedial orders by the Commandant, United States Coast Guard. This complaint procedure is available to the plaintiffs and accords them an adequate remedy at law.
To summarize, the plaintiffs have failed to show they are CT Page 2992 entitled to the issuance of a temporary injunction. Their application fails for two reasons: (1) the defendants have built the bridge in accordance with a federal permit, and (2) the plaintiffs have available to them an adequate administrative remedy.
The application for a temporary injunction is denied.
THIM, JUDGE