UNITED STATES *v.* RIDER *et al.*, County Commissioners.

*(District Court, S. D. Ohio, E. D.   May 14, 1892.)*

No. 211.

1. NAVIGABLE WATERS—BRIDGES—SUFFICIENCY OF NOTICE TO PROVIDE "DRAW."
   County commissioners of M. county, Ohio, were notified by the secretary of war, February 25, 1891, to provide a state bridge over the M. river, with a "draw" for the passage of boats, on or before September 30, 1891.   The commissioners had no funds with which to provide the "draw," could make no levy for that purpose until March or June, 1891, which levy would not be collectible in full before December 20th of the year following.   The commissioners had applied to the legislature for the necessary funds without success, and had no opportunity to submit the question of the necessary expenditure, which exceeded $10,000, to a popular vote, as required in case of such excess.   *Held,* that the notice did not give a reasonable time in which to provide the "draw."

2. SAME—POWERS OF SECRETARY OF WAR—CONSTITUTIONALITY OF ACT.
   Act Cong. Aug. 11, 1888, (25 U. S. St. at Large, p. 424, §§ 9, 10,) providing that, when the secretary of war shall have reason to believe that any bridge is an obstruction to free navigation, he shall give notice requiring the bridge to be so altered as to render navigation through or under it easy and unobstructed, and imposing a penalty on the controllers of the bridge for failing to make such provision, is unconstitutional, in that it delegates to the secretary of war powers exclusively vested in congress.   *U. S. v. Keokuk & H. Bridge Co.,* 45 Fed. Rep. 178, followed.

At Law.   Information against Frank M. Rider, John F. Burgess, and others, county commissioners of Muskingum county, Ohio, for failing to provide a bridge with a "draw" for the passage of boats.   There was a verdict and judgment for plaintiff, and defendants move for a new trial. Motion sustained, and final judgment entered for defendants.

*John W. Herron,* for the United States.

*F. H. Southard* and *S. M. Winn,* for defendants.

SAGE, District Judge.   The defendants are prosecuted under an information founded upon the fourth and fifth sections of the river and harbor act, approved September 19, 1890.   The charges are, in short, that on the 15th of October, 1891, the defendants were the county commissioners of Muskingum county, Ohio, and as such empowered by the law of Ohio to construct, alter, and keep in repair all necessary bridges over streams and public canals on all state and county roads, and then and there had control of the bridge across the Muskingum river between Taylorville and Duncan's Falls; and the secretary of war of the United States having good reason to believe that said bridge was an unreasonable obstruction to the navigation of said river, a navigable stream over which the United States has jurisdiction, gave written notice to the defendants on the 19th of December, 1890, that said bridge was considered an obstruction to navigation by reason of the fact that it had no draw for the passage of boats by way of the new lock just above the south end of the new bridge at Taylorsville, Ohio, and, in order to afford defendants a reasonable opportunity to be heard and give evidence in regard to said complaint, the 6th of January, 1891, was named and a place fixed for that purpose; that the time was extended to the 3d of February, 1891, and that on the 25th of February, 1891, the secretary gave written notice to the defendants that said bridge was an unreasonable obstruction to

the free navigation of said river, for the reason above stated, and required the construction of a draw span therein in accordance with plans shown in a map attached to said notice, and served upon the defendants; said notice prescribed that said draw span should be made and completed within a reasonable time, to wit, on or before the 30th of September, 1891; that personal service of said notice was made on the 3d of March, 1891; that afterwards the defendants, on, to wit, the 15th day of October, 1891, after receiving said notice, did unlawfully fail and refuse to comply with the order of the secretary, and to make the alterations aforesaid, contrary to the form of sections 4 and 5 of the act above referred to. Those sections are as follows:

"Sec. 4. That section nine of the river and harbor act of August eleventh, eighteen hundred and eighty-eight, be amended and re-enacted so as to read as follows: That whenever the secretary of war shall have good reason to believe that any railroad or other bridge now constructed, or which may hereafter be constructed, over any of the navigable water ways of the United States, is an unreasonable obstruction to the free navigation of such waters, on account of insufficient height, width of span, or otherwise, or where there is difficulty in passing the draw opening or the draw span of such bridge by rafts, steamboats, or other water craft, it shall be the duty of the said secretary, first giving the parties reasonable opportunity to be heard, to give notice to the persons or corporations owning or controlling such bridge so to alter the same as to render navigation through or under it reasonably free, easy, and unobstructed; and in giving such notice he shall specify the changes required to be made, and shall prescribe in each case a reasonable time in which to make them. If at the end of such time the alteration has not been made, the secretary of war shall forthwith notify the United States district attorney for the district in which such bridge is situated, to the end that the criminal proceedings mentioned in the succeeding section may be taken.

"Sec. 5. That section ten of the river and harbor act of August eleventh, eighteen hundred and eighty-eight, be amended and re-enacted so as to read as follows: That if the persons, corporations, or associations owning or controlling any railroad or other bridge shall, after receiving notice to that effect as hereinbefore required from the secretary of war, and within the time prescribed by him, willfully fail or refuse to remove the same, or to comply with the lawful order of the secretary of war in the premises, such persons, corporation, or association shall be deemed guilty of a misdemeanor, and, on conviction thereof, shall be punished by a fine not exceeding five thousand dollars; and every month such persons, corporation, or association shall remain in default in respect to the removal or alteration of such bridge shall be deemed a new offense, and subject the persons, corporation, or association so offending to the penalties above prescribed."

Upon the trial, the evidence being in, a *pro forma* verdict of guilty was taken by consent, with the understanding that the questions of law involved should be presented and considered on motion for new trial. They are as follows:

1. Was the notice to the defendants reasonable? The charges of the information in regard to the notice were established by the evidence, and are not disputed. It has been held that where the facts are clear, what is reasonable notice or reasonable time is always a question exclusively for the court. *Toland* v. *Sprague*, 12 Pet. 336; *Wiggins* v. *Burkham*, 10 Wall. 132. It appears from the evidence that, at the time of the

service of said notice, the defendants had no funds with which to make the required change; and that under the statute of Ohio they, as commissioners, could only make levies for bridge purposes at their March or June session in each year, one half of which would be collectible not before the 20th of December of the year following.   It also appears from the evidence that the defendants applied for legislation authorizing them to raise the funds with which to make the change required, and that their application failed, and the defendants introduced evidence tending to prove that the cost of the required change will exceed the sum of $10,000, which, however, is denied by witnesses for the government. The defendants, under the statutes of Ohio, cannot expend, in constructing, altering, or repairing any bridge, a sum in excess of $10,000 without special authority from the legislature, or without submitting the same to a vote of the people of the county at some general election; and there was no general election after the service of notice, excepting the spring election, on the first Monday of April, and the state election, on the first Tuesday after the first Monday of November.   The first of these dates was too early after the notice, and the last was after the limit prescribed by the notice.   The defendants had no authority in the matter excepting as county commissioners.   They had no bridge fund to draw upon, and no authority of law to incur any obligation excepting upon their individual responsibility.   It would be manifestly unreasonable to expect them to proceed without the authority of local law, and without money, upon their own responsibility, to incur the expense involved in making the required changes, whether the cost would have been less or more than $10,000.   The notice was not reasonable, and therefore, if upon no other ground, the verdict must be set aside.

2. The main question, and that which goes to the root of the matter, is whether congress has the power to confer upon the secretary of war the authority attempted to be conferred by the act.   In accordance with its terms, whenever he has good reason to believe that a bridge is an unreasonable obstruction to navigation, he is to give notice to the parties owning or controlling the same—after first giving them reasonable opportunity to be heard—to make such alterations as he may specify, and, upon their failure or refusal to make the same within a reasonable time, they are to be deemed guilty of a misdemeanor, and the secretary may direct the institution of criminal proceedings.   The power of the secretary depends upon his having adjudged that the bridge is an obstruction, and his adjudication is made final and conclusive.   This is a judicial power.   The question is one of fact, or a mixed question of law and fact, and it cannot be determined by a court without a jury unless the defendant consent.   It was held in *Grant* v. *Raymond*, 6 Pet. 242, Chief Justice MARSHALL announcing the decision, that the secretary of state of the United States is not an officer in whom, under the constitution, judicial power can be vested.   In that case the secretary had gone through with the form of reissuing a patent for an invention.   It is true that there was not then any statute authorizing a reissue.   The original patent had been granted by the president, signed by him, and counter-

signed by the secretary. It was returned to the patent office, and canceled, owing to the defective specification on which it was issued, and another patent issued with a corrected specification. The argument in favor of the reissue was that the department of state had clearly the right to correct an inadvertent or innocent mistake. But the court said that the question of inadvertence or mistake was a judicial question, which could not be decided by the secretary of state. It is also true that within a few months after the decision of that case congress enacted a statute making it lawful for the secretary of state, upon the surrender of a patent invalid or inoperative by reason of inadvertence, accident, or mistake, as specified in the act, to cause a new patent for the same invention, and for the residue of the term of the original patent, to be issued, the reissued patent to be liable to the same defenses as the original; and that subsequently the authority was vested in the commissioner of patents, with whom it remains to this day. But there is this radical difference between the case of a reissued patent and the case now before the court: The patent, original or reissued, is only *prima facie* evidence of an exclusive right in the patentee, and it is open to all defenses, including, in the case of a reissued patent, those involving an investigation into the question whether there was in fact any such inadvertence, accident, or mistake as was requisite to authorize the reissue; while here the secretary of war finds and decides conclusively and finally whether the bridge is an obstruction, what changes shall be made, and within what time; and the only questions left open to be tried in the criminal prosecution for misdemeanor, which he is authorized to set on foot, are whether he has made the findings and decision, ordered the changes, given the proper notices, and whether the defendants have complied with his orders.

In this case the bridge was built about 1874 by the board of commissioners of Muskingum county by virtue of a grant from the state of Ohio under the act of the legislature of March 25, 1870. The Muskingum river is entirely within the state of Ohio. Since 1838, and until the date hereinafter mentioned, it has been under the control of the state, through its board of public works, which maintained a system of slack-water navigation until the cession of the river and its improvements by the state of Ohio to the federal government, March 21, 1887. Since that time the general government has caused to be constructed in a dam at the head of rapids above said bridge, on its west side and under the bridge, an artificial channel. It has also raised the locks and dam on the river below, thus raising the level of the water above, some four feet. These improvements and changes furnished the occasion alleged for requiring the proposed changes in the bridge. The right of the state of Ohio to erect or authorize bridges over the river which should not interfere with its navigation is conceded, and that such bridges were lawful structures. But it is urged for the government that they were built subject to the power of congress at any time to act upon the subject of the navigation of the river, and to define what structures should be regarded as interfering with that navigation; citing *Gilman* v.

*Philadelphia,* 3 Wall. 731. There is a long series of cases decided by the supreme court, and cited in *U. S.* v. *Keokuk & H. Bridge Co.,* 45 Fed. Rep., at page 180, sustaining the general proposition as above stated. But the question to be here decided is whether congress could delegate, as it has undertaken to do, its authority in the premises to the secretary of war. My conclusion is that it could not. The reasons for this conclusion are so well and so fully set forth by Judge SHIRAS in *U. S.* v. *Keokuk & H. Bridge Co.,* cited above, that it is sufficient to refer to that case, and to express, as I do, my concurrence in the reasoning and conclusions of the opinion therein.

The verdict against the defendants will be set aside, and the judgment of the court will be that sections 4 and 5 of the river and harbor act of September 19, 1890, upon which the information is based, are unconstitutional, and that the defendants go hence without day.