Argued 29 October; decided 19 November, 1900.

## PORTLAND v. MONTGOMERY.

[62 Pac. 755.]

RIGHT OF CITY TO CONTROL LOCATION OF WHARVES.

1. Under the provisions of Section 4228, Hill's Ann. Laws, which is printed in the margin below,* a city may prohibit or control the erection of wharves beyond low-water mark in navigable streams.

---

*Sec. 4228. "The corporate authorities of the town wherein such wharf or wharves is proposed to be constructed shall have power to regulate the exercise of the privilege or franchise herein granted; and upon the application of the person entitled to and desiring to construct such wharf or wharves, such corporate authorities shall, by ordinance or other like mode, prescribe the mode and extent to which the same may

REASONABLENESS OF CITY REGULATIONS — PRESUMPTION.

2. A regulation prescribed by a municipality under its delegated powers is presumptively reasonable.

STATUTORY CONSTRUCTION — CONTROL OVER NAVIGABLE RIVERS.

3. Act Cong. Sept. 19, 1890 (26 Stat. 454, 455, § 7), prohibiting the construction of a wharf outside the harbor lines of any port without the permission of the Secretary of War, does not prohibit a state or a city having power to control the location of wharves within its limits from enacting an ordinance restraining the construction of wharves beyond a wharf line adopted by the city, and which is within the harbor line fixed by the Secretary of War, since the act of Congress only prohibits the extension of the wharf beyond such line, and does not either expressly or impliedly give riparian owners the right to wharf out to the government line.

From Multnomah: JOHN B. CLELAND, Judge.

Suit by the City of Portland and the Port of Portland against J. B. Montgomery to restrain the construction of a wharf.

The Willamette River is wholly within the State of Oregon, and up to and above the City of Portland is navigated regularly by vessels, steamboats, and other craft engaged in interstate and foreign commerce. The City of Portland is a municipal corporation organized by a special act of the legislature, and includes within its boundaries a part of the Willamette River. The defendant, Montgomery, is the owner of real property within the corporate limits of the city, abutting upon the east side of the river, and is entitled to the rights of a riparian proprietor. The city is given power and authority by its charter (Laws 1891, p. 805, § 16), "to regulate the building of wharves and the driving of piles in the Willamette and Columbia rivers within the limits of the city,

---

be exercised beyond the line of low-water mark, so that such wharf or wharves shall not be constructed any further into such stream or other water beyond such low-water line than may be necessary and convenient for the purpose expressed in Section 4227, and so that the same shall not unnecessarily interfere with the navigation of such stream or other like water."—REPORTER.

and to establish a line beyond which wharves shall not be built nor piles driven." On the eighteenth of February, 1891, the legislature passed an act creating a municipal corporation, composed of the then cities of Portland, East Portland, and Albina (now the consolidated City of Portland), and surrounding territory, by the name and style of the "Port of Portland," the object and purpose of which is "to so improve the Willamette River at the cities of Portland, East Portland and Albina, and the Willamette and Columbia rivers between said cities and the sea, as that there shall be made and permanently maintained in said Willamette River at said cities and in the said Willamette and Columbia rivers between said cities and the sea a ship channel of good and sufficient width and having a depth at all points at mean low water both at said cities and between said cities and the sea, of not less than twenty-five feet" : Laws 1891, p. 791, § 2. So far as may be necessary or convenient to carry out the objects of its creation, such corporation is given "the full control of said rivers at said cities, and between said cities and the sea, so far and to the full extent that this state can grant the same, and shall be and is hereby authorized to remove such obstructions therefrom, and erect such works therein, as may be found necessary or convenient in creating or maintaining the channel as aforesaid." The power and authority given to the Port of Portland is vested in and exercised by commissioners, who have been duly appointed and have organized as provided by law. On August 9, 1892, the Secretary of War, pursuant to the provisions of the amendment to section 12 of the river and harbor act of August, 1888, approved September 19, 1890, established harbor lines in the Willamette River at Portland, and on December 12, 1892, the city passed "an ordinance establishing a wharf line on the city front," which conforms to and coincides with the harbor line previously established by the Secretary of War. By section 3 of said ordinance it is provided that "all wharves

or other structures hereafter built or erected on the river front of the city on the east side of the Willamette River shall not extend westerly beyond the line as laid down in section 1 of this ordinance, and all permits hereafter granted by the common council for the driving of piles or erection of structures shall conform to said line.''

On May 21, 1898, the defendant, Montgomery, being desirous of constructing a wharf in front of his property, petitioned the Secretary of War to relocate the harbor line by an extension to an intersection of the lines previously established in front of Montgomery Dock, and in front of the North Pacific Terminal Company's dock, thus extending it at the point of intersection of such lines some 85 feet into the river beyond the line previously located. In support of his petition he alleged that the harbor line as then established was too far inland, and at many points in water from six inches to two feet deep. The Secretary of War referred the application to the United States Engineer at Portland for report, with directions that public hearing be had on the question as to whether the desired change should be made. After such hearing the local engineer reported adversely to the change, and his report, together with the evidence taken at the hearing, was forwarded to the Chief of Engineers at Washington, who subsequently transmitted the same, with his views, to the Secretary of War. On September 23, 1898, the secretary granted Montgomery's petition, and changed the harbor lines accordingly. Montgomery immediately began the construction of a wharf covering some 30,000 square feet of the river outside of the wharf line established by the city, but inside of the harbor line as relocated by the Secretary of War on September 23, 1898. Thereupon the Port of Portland, at a meeting duly called, November 2, 1898, adopted the following preamble and resolution: *"Whereas,* the wharf line heretofore, and prior to the first day of July, 1898, established by the United States Engineers, curtails

the navigable waters of the Willamette River at the City of Portland to the full extent which may be done in the interest of the shipping interests of this port; and *whereas*, in order to provide sufficient space and width of channel to accommodate the fast-increasing shipping interests of this port, it will be necessary to, in the near future, so improve the channel of the said river at Portland, and within the limits of this port, as to make it twenty-five feet in depth within the entire limits of said port, and from the steel bridge crossing said river in the City of Portland, now used by the various railroads entering the said City of Portland, to the south end of Swan Island, and to its full width as between said wharf lines so established as aforesaid; and *whereas,* to allow any wharves to be extended into said river in this port, and within the limits of the City of Portland, beyond the wharf line aforesaid, will be of great and lasting damage to this port and to the shipping interests thereof:   Now, *therefore,* be it resolved, that the wharf line of this port and at the City of Portland and on both sides of the Willamette River be, and the same is hereby, established and fixed as the same as that heretofore, and prior to the first day of July, 1898, established by the United States Engineers, until the further action of this Port. *Whereas,* one J. B. Montgomery, and those in his employ or acting under him, is now engaged in or intends to construct a wharf on property owned by him, situate in what was at one time the City of Albina, and extending beyond said wharf line, *therefore,* be it resolved, that the said J. B. Montgomery, and those acting under him, be notified to cease the construction of said wharf beyond said wharf line aforesaid, and to at once remove any piling or other obstruction which he may have placed in the river in front of his said property and beyond said wharf line, and that if he shall fail to do so at once, that the executive committee be instructed to take such steps as may be necessary, by legal proceedings or otherwise, to secure the object afore-

said." A copy of such preamble and resolution was served upon Montgomery, together with a notice, signed by the president and secretary of the Port of Portland, requiring him to cease driving piles in the river outside of the wharf line established by the city, and to remove any piling or other obstruction which he may have previously placed there.

On November 23, 1898, the Commissioners of the Port of Portland passed the following resolution: *"Whereas,* on the ninth day of August, 1892, the United States Engineers established a wharf line in the Willamette River within the City of Portland, Oregon; and *whereas,* said wharf line has been adopted and established by said city and also by the Port of Portland; and *whereas,* J. B. Montgomery is now engaged in the construction of a wharf in said river outside of said line,—*therefore,* be it resolved, by the Board of Commissioners of the Port of Portland, that in our judgment, and we do hereby declare and decide that, the observance of said wharf line in the construction of wharves is necessary for a good and sufficient width of channel in said river within said city, and that the construction of said wharf which said Montgomery proposes to extend eighty-five feet into said river beyond said wharf line will be an obstruction to our work in making and maintaining said width of channel; and, further, it is our judgment that said wharf, when constructed as proposed by said Montgomery, will interfere with the navigation of said river, by creating shoal places in its now navigable waters, and will interfere with and obstruct our work in making and maintaining a channel in said river twenty-five deep in depth, as provided for in the act incorporating the Port of Portland." Montgomery refused to comply with the notice or resolutions of the Port of Portland, and continued the construction of the wharf, whereupon this suit was commenced by the city and the Port of Portland November 25, 1898, to enjoin its extension outside of the wharf line established by the city.

The complaint, after setting up the incorporation of the city and the Port of Portland, the ordinance establishing the wharf line, and the resolution of the Port of Portland, alleges that Montgomery is engaged in the construction of a wharf outside of the wharf line established by the city, and asks that he be enjoined and restrained from so constructing his wharf. The answer sets out the proceedings before the Secretary of War on Montgomery's application for a relocation of the harbor line in front of his property, and the re-establishment thereof, and avers that the wharf, as the same is being constructed, will not do any injury or damage whatever to the navigation or commerce of the Willamette River within the limits of the City of Portland, but, on the contrary, will be an improvement to the harbor and an aid to navigation and commerce. A demurrer to that part of the answer setting up the action of the Secretary of War on September 23, 1898, re-establishing or relocating the harbor line, was overruled, and the cause proceeded to trial upon the merits. The court found the facts substantially as above stated, and ruled that the harbor line re-established and re-located by the Secretary of War on September 23, 1898, is the only proper and legal wharf line in front of the defendant's property, and that neither the City of Portland nor the Port of Portland has any jurisdiction or authority to prevent or interfere with the construction of a wharf up to the line so established, and plaintiffs appeal.                REVERSED.

For appellants there was a brief over the names of *Williams, Wood & Linthicum* and *Joel M. Long,* City Attorney, with an oral argument by *Mr. Geo. H. Williams.*

For respondent there was a brief over the names of *Mitchell & Tanner* and *Stott, Boise & Stout,* with an oral argument by *Messrs. John H. Mitchell* and *Raleigh Stott.*

MR. CHIEF JUSTICE BEAN, after stating the facts, delivered the opinion of the court.

It is not alleged in the complaint that the proposed wharf will be an obstruction to, or in any way interfere with, the navigation of the river, or with any of the powers and duties of the Port of Portland; but such is the necessary inference, *prima facie*, at least, from the resolutions forbidding its construction, the fact that it will extend beyond the wharf line as established by the city, and that its erection is in violation of an ordinance thereof.

1.    The defendant's right to construct a wharf in front of his property is subject to the power of the corporate authorities to "prescribe the mode and extent to which the same may be exercised beyond the line of low-water mark": Hill's Ann. Laws, § 4228; Portland City Charter, Laws 1891, p. 805, § 16; 29 Am. & Eng. Enc. Law (1 ed.), 69; *Lewis* v. *City of Portland,* 25 Or. 133 (46 Am. &. Eng. Corp. Cas. 230, 42 Am. St. Rep. 772, 35 Pac. 256, 22 L. R. A. 736).

2.    And it will be assumed that the regulations prescribed by the municipal authorities are reasonable and valid, until the contrary is made to appear.

3.    The only questions in this case, therefore, are whether the act of congress of September 19, 1890 (26 U. S. Stat. 454, 455), authorizing the Secretary of War to establish harbor lines, is valid, and, if so, whether it vests in that officer the power and authority to permit or authorize the construction of wharves up to such lines in navigable waters wholly within a state, notwithstanding the laws of the state prohibit such construction.    Sections 7 and 12 of the act are as follows:  "Sec. 7.    That it shall not be lawful to build any wharf, pier, dolphin, boom, dam, weir, breakwater, bulkhead, jetty, or structure of any kind outside established harbor lines, or in any navigable waters of the United States where no harbor lines are or may be established, without the

permission of the Secretary of War, in any port, roadstead, haven, harbor, navigable river, or other waters of the United States, in such manner as shall obstruct or impair navigation, commerce, or anchorage of said waters, and it shall not be lawful hereafter to commence the construction of any bridge, bridge-draw, bridge piers and abutments, causeway or other works over or in any port, road, roadstead, haven, harbor, navigable river, or navigable waters of the United States, under any act of the legislative assembly of any state, until the location and plan of such bridge or other works have been submitted to and approved by the Secretary of War, or to excavate or fill, or in any manner to alter or modify, the course, location, condition, or capacity of the channel of said navigable water of the United States, unless approved and authorized by the Secretary of War; *provided,* that this section shall not apply to any bridge, bridge-draw, bridge piers and abutments the construction of which has been heretofore duly authorized by law, or be so construed as to authorize the construction of any bridge, drawbridge, bridge piers and abutments, or other works, under an act of the legislature of any state, over or in any stream, port, roadstead, haven or harbor, or other navigable water not wholly within the limits of such state." "Sec. 12. That section 12 of the river and harbor act of August eleventh, eighteen hundred and eighty-eight, be amended and re-enacted so as to read as follows: Where it is made manifest to the Secretary of War that the establishment of harbor lines is essential to the preservation and protection of harbors, he may, and is hereby authorized to, cause such lines to be established, beyond which no piers, wharves, bulkheads or other works shall be extended or deposits made, except under such regulations as may be prescribed from time to time by him; and any person who shall willfully violate the provisions of this section, or any rule or regulation made by the Secretary of War in pursuance of this section, shall be deemed guilty of a misdemeanor, and,

on conviction thereof, shall be punished by a fine not exceeding one thousand dollars, or imprisonment not exceeding one year, at the discretion of the court, for each offense."

The contention for the defendant is that the sections above quoted manifest the purpose of congress to deprive the several states of all authority to control and regulate the extension of wharves in the harbors of the United States, although such harbors may be situated wholly within their territory; that full power resides in the state to prescribe the line beyond which piers, docks, wharves, and other structures may not be extended into the navigable waters of a harbor, in the absence of the exercise by congress of authority to the contrary, is not disputed: *Cannon* v. *City of New Orleans,* 87 U. S. (20 Wall.), 577; *Packet Co.* v. *City of Keokuk,* 95 U. S. 80; *Packet Co.* v. *St. Louis,* 100 U. S. 423; *Cincinnati Packet Co.* v. *Town of Catlettsburg,* 105 U. S. 559; *Parkersburg Transp. Co.* v. *City of Parkersburg,* 107 U. S. 692 (2 Sup. Ct. 732) ; *Ouachita Packet Co.* v. *Aiken,* 121 U. S. 444 (7 Sup. Ct. 907) ; *Illinois Cent. R. R. Co.* v. *Illinois,* 146 U. S. 387 (13 Sup. Ct. 110). But it is asserted that this power in the state is predicated solely upon the failure of congress to exercise its paramount authority under the commercial clause of the constitution, and therefore the authority of the state no longer obtains, since the act of 1890 amounts to express assumption by congress of entire control over all harbors of the United States, so far as the establishment of harbor lines and the construction of wharves, piers, and docks are concerned.

For the plaintiffs it is contended that section 12, above cited, is unconstitutional and void, for the reason that it delegates to the Secretary of War powers which are exclusively lodged by the constitution in congress. It is admitted that, under the commercial clause of the constitution, where the navigable waters of a port or river of the United States are accessible from a state other than the one in which they lie,

congress has absolute power over them, so far as to preserve and protect their free navigation, and can declare what may and may not constitute obstructions thereto; but such power, it is argued, can alone be exercised by congress, and cannot be delegated to any other body or agency. It may be assumed that congress can confer upon the Secretary of War, or any other agent, the duty of ascertaining whether any given harbor line conflicts with some act of congress upon the subject, and can require any change or modification thereof that may be needed to conform it thereto, or it may, perhaps, as in the matter of bridges *(Miller* v. *Mayor, etc.,* 109 U. S. 385, 3 Sup. Ct. 228), prohibit the establishment by local authorities of harbor lines without the approval of the Secretary of War or some other agency.

But this does not meet the question whether congress can delegate the whole matter to the Secretary of War. The question is important and interesting, and has been the occasion of considerable discussion in the federal courts, although it has never been adjudicated by the Supreme Court of the United States: *United States* v. *Keokuk & H. Bridge Co.* (D. C.) 45 Fed. 178; *United States* v. *Rider* (D. C.) 50 Fed. 406; *United States* v. *City of Moline* (D. C.) 82 Fed. 592; *United States* v. *Romard* (C. C.) 89 Fed. 156. The tendency of the decisions, as we read them, supports the argument that the act is void as an unlawful delegation of authority. It does not provide that harbor lines shall be established in the harbors of the United States, leaving to the Secretary of War the mere duty of executing the will of congress, but it confers upon that officer the right to determine whether such lines shall be established or not, thus, in effect, vesting in him the power to say when and under what circumstances the general government will assume authority over a given harbor. The states have jurisdiction over the navigable waters within their boundaries until congress as-

38 OR.—15.

sumes authority over them, and it would seem doubtful that congress can legally confer upon a mere executive officer the power to determine whether the general government or the state has jurisdiction over a given subject-matter, and especially to establish, alter, or change, at his will and pleasure, lines beyond which it shall be unlawful to extend or maintain wharves, piers, and landing places in the great commercial cities of the country, when the location or change of a single line might involve the loss of millions of dollars to individuals. But, as we construe the act of 1890, it was not designed to interfere with the power and authority of the several states over the location and construction of wharves, piers, and landing places, unless they encroach upon the harbor lines established by the Secretary of War. It is unnecessary, therefore, to decide whether it is void for the reason suggested. It provides that under certain circumstances the Secretary of War may establish a line in harbors of the United States, beyond which no pier, wharf, etc., shall be extended, except by his permission, or under such regulations as may be prescribed from time to time. This is not equivalent, however, to a legislative declaration that they may be extended up to such line regardless of the local laws on the subject. The more reasonable construction is that congress, in the exercise of its paramount authority under the commercial clause of the constitution, has authorized the establishment of a line beyond which such structures shall not be extended, except by permission of the Secretary of ·War, but has left to the several states authority to determine whether local interests require that a larger space in the harbor shall be reserved for the use of ships and shipping than that outside of such line. The obvious purpose of the law is to preserve the free navigation of harbors. To that end it provides for the establishment of lines therein, when necessary to their "preservation and protection," outside of which no ob-

struction shall be permitted without the consent of the federal government.

Congress has thus assumed jurisdiction over that part of a harbor outside of a line which the Secretary of War may lawfully establish. But it has not, in our opinion, assumed jurisdiction or authority over the space between such line and the shore, nor has it made any provision, directly or indirectly, as to what use shall be made thereof. While wharves, piers, and landing places are essential to commerce by water, they are, nevertheless, in their nature local, attached to the soil, and require a diversity of rules and regulations. Full jurisdiction and control over them is vested in the state, in the absence of congressional legislation upon the subject; and such legislation cannot, we think, be inferred from mere authority given an executive officer to establish a line in the harbor beyond which it shall be unlawful to extend such structures without his consent. The mere delegation of such an authority does not manifest a purpose to assume jurisdiction over the entire harbor, nor to confer upon such officer the power to give original authority to construct wharves. Nor is the provision of section 7 that it shall not be lawful to build any wharves, etc., outside of an established harbor line, without the permission of the Secretary of War, equivalent to a declaration that he has power to authorize the contruction of wharves. As it pertains to such structures, his duties are prohibitive in their character, and confined alone to preventing their extension beyond such a line as may be established by him. The initiative in the construction of wharves is with the shore owner, under such regulations as the state may make; and the duty of the Secretary of War, under the act of congress, is to see that they do not extend into the harbor beyond a certain line without his permission. So long as the legislation of the state does not interfere with the duties of such officer, or conflict with the line established by him, it is controlling. Now, in this case there is no con-

flict.   The purpose of the City of Portland is not to interfere with the harbor line relocated by the Secretary of War in September, 1898, but to prohibit the extension of wharves and piers beyond a certain line inside thereof.  In our opinion, such power and authority still remain in the state, and congress has not by the act of 1890 assumed to exercise exclusive control over the matter.   This conclusion, we think, finds support in *Lake Shore Ry. Co.* v. *State of Ohio,* 165 U. S. 365 (17 Sup. Ct. 357).   It follows that the decree of the court below must be reversed, and a decree entered here in accordance with this opinion.                            REVERSED.