E. A. CHATFIELD CO. et al. v. CITY OF NEW HAVEN et al.

(Circuit Court, D. Connecticut. October 7, 1901.)

No. 1,057.

1. JURISDICTION OF FEDERAL COURTS—FEDERAL QUESTION.

A suit by private parties to enjoin the maintenance of a bridge across a navigable river, which is wholly within a state, from which complainants allege they suffer special injury, on the ground that such bridge has been declared by the secretary of war, acting under the provisions of a federal statute, to constitute an unreasonable obstruction to navigation, and that it is therefore a public nuisance, is one arising under the laws of the United States, of which a federal court has jurisdiction, without regard to the citizenship of the parties.[1]

2. NAVIGABLE WATERS—STATUTE FOR REGULATION OF BRIDGES—CONSTITUTIONALITY.

Section 18 of the river and harbor act of 1899 (30 Stat. 1153) authorizes the secretary of war to determine, after notice to the parties, whether any bridge which has been constructed over any of the navigable water ways of the United States is an unreasonable obstruction to the free navigation of such waters, and if he so determines to notify the parties owning or controlling such bridge to so alter the same as to render navigation through or under it reasonably free, easy, and unobstructed, within a reasonable time, which he shall prescribe. It further provides that if, at the end of such time, the alteration has not been made, the parties owning or controlling such bridge, who willfully fail or refuse to remove the same or to comply with the order of the secretary, shall be deemed guilty of a misdemeanor, and shall be prosecuted therefor. *Held*, that such provision is not unconstitutional, as delegating legislative or judicial power to the secretary of war, but that the power conferred upon him was administrative; a judicial proceeding in the courts being expressly provided for to enforce his orders, in which the legality of his action may be reviewed, and any rights of the defendants may he raised and determined.

---

[1] Jurisdiction in cases involving federal questions, see notes to Bailey v. Mosher, 11 C. C. A. 308; Montana Ore-Purchasing Co. v. Boston & M. Consol. Copper & Silver Min. Co., 35 C. C. A. 7.

**3.** JURISDICTION OF FEDERAL COURTS—ABATEMENT OF NUISANCE—OBSTRUCTIONS TO NAVIGATION.

No special statute is required to give a federal court of equity jurisdiction of a suit by private parties, who allege special injury, to enjoin the maintenance of a bridge over navigable waters, on the ground that it is maintained in violation of the laws of the United States, and is therefore a public nuisance, but such suit is within the general equity jurisdiction of the court, where the requisite amount is involved.

**4.** PUBLIC NUISANCE—PRIVATE SUIT FOR INJUNCTION—ALLEGATION OF SPECIAL INJURY.

A bill which alleges that complainant owns and operates a manufacturing plant situated on a navigable river, that it owns and operates vessels for the transportation of its products from its factory by water, and that defendants maintain a bridge across such river in violation of the laws of the United States, which constitutes a public nuisance, and which prevents the passage of complainant's vessels to and from its works, and makes it necessary to transship its products, shows special injury which will sustain a suit to abate the nuisance.

In Equity. On demurrer to bill.

F. L. Hungerford and M. M. Johnson, for complainants.

Leonard M. Daggett, James H. Webb, and S. C. Morehouse, for defendants.

SHIPMAN, Circuit Judge. The bill in equity in this case alleged as follows:

"That the plaintiffs the E. A. Chatfield Company and the Derby Transportation Company are, and during all the time hereinafter mentioned were, corporations organized and existing under and by virtue of the laws of the state of Connecticut. * * * That the plaintiffs Nathan A. Hull, Harold H. Howard. and Gertrude F. Howard, all of New Haven, at all times hereinafter mentioned were, and now are, citizens of the state of Connecticut. That the defendants, the city of New Haven and the town of Orange, are, and during all the time hereinafter mentioned were, municipal corporations, organized and existing under and by virtue of the laws of said state of Connecticut. That the West river is a navigable stream, which empties into Long Island Sound, and which for a long distance flows between the city of New Haven and the town of Orange, aforesaid, and that its waters are navigable from its mouth to a distance of several miles towards its source. That the plaintiff the E. A. Chatfield Company is the owner of a large tract of riparian property on said West river above the purpresture and nuisance hereinafter referred to, upon which property it has a large manufactory, where the plaintiff is engaged in the manufacture and sale of fire bricks, pressed-front bricks, and other mason's supplies in large quantities. That the plaintiffs the Derby Transportation Company, Nathan A. Hull, Harold H. Howard, and Gertrude F. Howard are the owners of vessels registered in accordance with the laws of the United States, engaged in navigating said West river from and to the works of the said E. A. Chatfield Company, in carrying from said works the products of said company, and in carrying to said works the supplies for use therein. That all the plaintiffs are engaged in interstate and domestic commerce in navigating the said West river from its mouth to a considerable distance above the bridge hereinafter referred to. That the said defendants, for a period of many years last past, have maintained, and continue to maintain, an obstruction in the navigable waters of said river near where it empties into Long Island Sound, as aforesaid, such obstruction consisting of a bridge at Kimberly avennue, so called, of the town of Orange, aforesaid, across said West river between said New Haven and said Orange. That said bridge is an unreasonable obstruction to the free navigation of the said West river, which is one of the navigable water ways of the United States, on account of the bridge not being provided with a draw, and is both a purpresture and a nuisance. That the

plaintiffs, by reason of said obstruction, have been prevented from reasonable navigation of said river, as aforesaid, in suitable vessels for the carrying on of said navigation. That they could and can not, in a reasonably free, easy, and unobstructed manner, carry their merchandise by the said navigable way above said obstruction, but have been and are forced to transship the same to smaller vessels. That they have been and are forced to carry some of said merchandise by a longer and more difficult way, to wit, by land. That they have been compelled, at great labor and expense, to construct vessels specially adapted, so that such vessels might be able, under favorable conditions, to pass through and by said obstruction, but which are unsuitable for general navigation, and that the plaintiffs have further been greatly delayed, hindered, and impeded in said navigation, whereby the plaintiffs have been severally damaged, as aforesaid, to an amount many times in excess of two thousand dollars ($2,000). That the said defendants have not, nor have either of them, obtained permission of the secretary of war of the United States to construct or to maintain said obstruction, and the said obstruction is maintained without the permission of the said secretary of war, and is continued in the said navigable stream aforesaid without his consent. That the said secretary of war on October 4, 1899, upon due notice to the defendants and upon hearing, entered the following order, to wit:

" 'Whereas, the secretary of war has good reason to believe that the bridge at Kimberly avenue, of the town of Orange, Connecticut, is an unreasonable obstruction to the free navigation of the said West river (which is one of the navigable water ways of the United States), on account of the bridge not being provided with a draw; and whereas, the following alterations, which have been recommended by the chief of engineers, are required to render navigation under it reasonably free, easy, and unobstructed, to wit, "Provide said bridge with a draw having a clear width of opening of forty-five feet at any stage of water, measured perpendicularly to the direction of the current, and having its masonry piers carried to twelve feet below the plane of mean low water;" and whereas, one year from the date of service of this notice is a reasonable time in which to alter said bridge as described above: Now, therefore, in obedience to, and by virtue of, section eighteen of an act of the congress of the United States entitled "An act making appropriations for the construction, repair and preservation of certain public works on rivers and harbors, and for other purposes," approved March 3, 1899, I, Elihu Root, secretary of war, do hereby notify the said selectmen of the city of New Haven, and the selectmen of the town of Orange, Connecticut, to alter the said bridge as described above, and prescribe that said alteration shall be made and completed on or before one year from the date of service hereof.                    Elihu Root, Secretary of War.'

"That due service of said order has been made on the defendants, much more than one year prior to the bringing of this bill, but the defendants have not complied with said order in any respect, but continue to maintain the said obstruction as it existed prior to and at the time of said order, contrary to the express terms thereof. That the construction and maintenance of said obstruction is a violation of the laws of the United States, particularly of 'An act making appropriations for the construction, repair, and preservation of certain public works on rivers and harbors and for other purposes,' approved March 3, 1899. * * *"

—And prayed for a permanent injunction against the further continuance of the said obstruction or any part of said bridge which obstructs navigation, and cause the same to be removed so as to render navigation through said bridge reasonably free, easy, and unobstructed, in accordance with the order of the secretary of war aforesaid. The defendants have demurred to the bill on the ground that it does not present a case of which this court has jurisdiction, and does not state a case which entitles the complainants to any relief.

Inasmuch as both complainants and defendants are citizens of Con-

necticut, if the court has jurisdiction it is because the suit arises under the laws of the United States. West river is wholly within the state of Connecticut. The bridge which is the subject of controversy was erected by the defendants either by the authority or by the assent of the state of Connecticut, and the United States had taken no statutory action in regard to this bridge prior to the year 1899. It is conceded that "there must be a direct statute of the United States in order to bring within the scope of its laws obstructions and nuisances in navigable streams within a state." Bridge Co. v. Hatch, 125 U. S. 1, 8 Sup. Ct. 811, 31 L. Ed. 629. In the year 1888 a section of the river and harbor bill was directed to the prevention, to a certain extent, of injuries to the navigation of the navigable waters of the United States arising from the piers of bridges over such waters, and statutes of a similar character continued to be passed, until in the river and harbor bill of 1899, approved March 3, 1899, a more careful series of statutes in regard to obstructions over navigable rivers was enacted than had previously been passed by congress. 30 Stat. 1151–1154. Section 9 prohibits the construction of any bridge over a navigable river of the United States without the consent of congress, provided that such structure may be built under the authority of the legislature of a state across navigable waters which are wholly within the limits of a single state, if the plans have been submitted to, and approved by, the secretary of war. Section 10 prohibits the creation of any obstruction not affirmatively authorized by congress to the navigable capacity of any waters of the United States. Section 18 is as follows:

"That, whenever the secretary of war shall have good reason to believe that any railroad or other bridge now constructed, or which may hereafter be constructed, over any of the navigable water ways of the United States is an unreasonable obstruction to the free navigation of such waters on account of insufficient height, width of span, or otherwise, or where there is difficulty in passing the draw opening or the draw span of such bridge by rafts, steamboats, or other water craft, it shall be the duty of the said secretary, first giving the parties reasonable opportunity to be heard, to give notice to the persons or corporations owning or controlling such bridge so to alter the same as to render navigation through or under it reasonably free, easy, and unobstructed; and in giving such notice he shall specify the changes recommended by the chief of engineers that are required to be made, and shall prescribe in each case a reasonable time in which to make them. If at the end of such time the alteration has not been made, the secretary of war shall forthwith notify the United States district attorney for the district in which such bridge is situated, to the end that the criminal proceedings hereinafter mentioned may be taken. If the persons, corporation or association owning or controlling any railroad or other bridge shall, after receiving notice to that effect, as hereinbefore required, from the secretary of war, and within the time prescribed by him wilfully fail or refuse to remove the same or to comply with the lawful order of the secretary of war in the premises, such persons, corporation, or association shall be deemed guilty of a misdemeanor, and on conviction thereof shall be punished by a fine not exceeding five thousand dollars, and every month such persons, corporation, or association shall remain in default in respect to the removal or alteration of such bridge shall be deemed a new offense, and subject the persons, corporation, or association so offending to the penalties above prescribed: provided, that in any case arising under the provisions of this section an appeal or writ of error may be taken from the

district courts or from the existing circuit courts direct to the supreme court either by the United States or by the defendants."

On October 4, 1899, the secretary of war, after reasonable notice to the defendants and after a hearing, made the order recited in the bill, which has neither been modified nor complied with.

Inasmuch as the bridge as it still exists has been declared by the secretary of war, under the provisions of this section, to be an unreasonable obstruction to the free navigation of West river, which is one of the navigable waters of the United States, and therefore is a public nuisance, the complainants, who present themselves as suffering "a particular private injury other than the common injury which every citizen suffers from a public nuisance," bring a bill in equity to abate the obstruction because it exists in violation of the laws of the United States. If section 18 is a valid statute, it appears, prima facie at least, that New Haven and Orange are continuing to maintain a bridge over navigable waters, which is, in its present form, in violation of a law of the United States. The right of private parties to invoke the aid of the courts of the United States to prevent this unreasonable obstruction to navigation, which produces an especial injury to them depends upon the effect which may be given to this statute. It is therefore a case arising under the laws of the United States, and this court has jurisdiction to determine whether the bill has stated a cause of action which entitles the complainants to relief. Water Co. v. Keyes, 96 U. S. 199, 24 L. Ed. 656; Tennessee v. Davis, 100 U. S. 257, 25 L. Ed. 648; Railroad Co. v. Mississippi, 102 U. S. 135, 26 L. Ed. 96.

The two objections which are urged against the statute are that it is unconstitutional, and that, if valid, its effect is limited to a criminal prosecution by the United States against the defendants.

Its unconstitutionality is asserted upon the ground that it delegated to the secretary of war either judicial or legislative power, and this position was sustained in respect to section 9 of the river and harbor bill of 1888, a statute of different provisions, in a case involving peculiar circumstances, in U. S. v. Keokuk & H. Bridge Co. (D. C.) 45 Fed. 178. A similar opinion was expressed, obiter, in U. S. v. Rider (D. C.) 50 Fed. 406. Section 4 of the act of 1890, which is substantially like section 18 of the act of 1899, came before Judge Grosscup in U. S. v. City of Moline (D. C.) 82 Fed. 592, in an information by the United States against the city of Moline, and the constitutionality of the act was assailed. In the opinion of the court, a distinction properly exists between judicial and administrative questions, and it is said with force that, if congress is prohibited from submitting to the decision of the departments administrative questions which are constantly arising, the government would be clogged. The court says:

"In this case two questions alone arise: First. Is the bridge an obstruction to navigation? Second. Is it there by any such legal right that the government may not interfere with it in the respect designated without just compensation? The first question is purely administrative, and is one that congress can certainly delegate to the secretary of war. A thousand ques-

tions of equal moment to the parties interested, and of equal difficulty, are necessarily delegated to the great departments of the government every month. In the very nature of things, congress cannot dispose of them. A government of the size of this, operated upon such a conception, would be clogged immediately. The second question is, undoubtedly, judicial, and for that very reason is not subject, constitutionally, to the decision of congress any more than of the secretary of war. If the bridge be there by legal right,—if it be a franchise or property that cannot be taken except after just compensation,—congress is powerless, either by special or general acts, to touch it. In the face of such property right, congress is as helpless as the war department. In the end, such right, whether it be attacked by special act of congress, or by some action of the war department, will, through some channel, find an appeal to the judiciary. This right of appeal to the judiciary in all questions in their nature judicial is preserved in the sections of the statute under discussion. The secretary of war has no power to carry out his decisions respecting these obstructions except through a court. Any question, whether of law or fact, essentially judicial, may be raised under these informations. A court of the United States stands always, by the clear provisions of the act, between the decision of the secretary and its execution. There is, therefore, in the act, no delegation of judicial power to the secretary that is not open to review in the courts. I hold, therefore, that the act, so far as it is applicable to the case in hand, is constitutional and valid, and the motion to quash will be overruled."

It is apparent that the section does not delegate to the secretary all the power of congress in regard to the construction of bridges over navigable waters, and to declare where bridges shall be built, but it delegates the power only to determine whether an existing bridge is an unreasonable obstruction to navigation, and to direct the manner in which the injury can be obviated. Lake Shore & M. S. R. Co. v. Ohio, 165 U. S. 365, 17 Sup. Ct. 357, 41 L. Ed. 747. I see no adequate reason to differ from the views of Judge Grosscup in regard to the construction of the section in question.

The next point is that, as the section does not authorize a suit in favor of private parties, no such authority exists. The question is not whether authority exists to bring an action in the district court in behalf of individuals, or whether authority is given to the attorney general to bring a bill in equity in behalf of the United States. It is conceded that such authority must be expressly conferred. But jurisdiction has always existed in the circuit court to have cognizance of suits of a civil nature between individuals which arise out of the laws of the United States when the matter in dispute exceeds a specified sum, and, if a cause of action has thus arisen, no further or more specific authority is requisite.

It has not been questioned that if congress had authorized the construction of a bridge over navigable waters, in accordance with plans approved by the secretary of war, or by a named board of engineers, and the bridge should be constructed in such defiance of the approved plans as to obstruct navigation, that a bill in equity in behalf of an individual specially injured by such obstruction against the corporations which are constructing the bridge could be sustained in the circuit court upon the ground that the structure is in violation of the laws of the United States. Miller v. New York, 13 Blatchf. 469, Fed. Cas. No. 9,585. The bill in this case is based upon the ground that after the construction of the bridge without the au-

thority of the United States it was found, in pursuance of an act of congress, to be an unreasonable impediment to navigation, and that the hindrance had not been removed.

It is next said that the bill does not show that the complainants had suffered a damage special and peculiar to themselves, and that the inconvenience was not of a character which was common to the public generally, and that, therefore, the bill did not show a case sufficient for their individual relief. It is true that "relief will not be granted unless it appears that the party complaining will sustain a special or peculiar damage,—an injury distinct from that done to the public at large." Frink v. Lawrence, 20 Conn. 117, 50 Am. Dec. 274. And it is also true that the courts of Connecticut have required that the special injury should clearly appear, but the special injury to the Chatfield Company, at least, is sufficiently averred in the bill. Frink v. Lawrence, supra; Stetson v. Faxon, 19 Pick. 149, 31 Am. Dec. 123.

The demurrer is overruled, without costs, with leave to answer on or before October 19, 1901.