## VALIDITY OF ORDINANCE AIMING TO PROTECT PERSONS ALIGHTING FROM OR BOARDING STREET CARS.

Common Pleas Court of Franklin County.

GEORGE HOGANS v. CITY OF COLUMBUS.

Decided, December, 1912.

*Municipal Corporations—Police Regulations and the Public Conve-nience and Safety—Delegated Power in that Behalf—Reasonableness of a Regulation—Constitutional Requirement as to Equality and Uniformity of Legislation—Private Rights.*

The Columbus ordinance, providing that "all vehicles going in the same direction with street cars within the corporation limits of the city, shall not pass between the street car and curb while passengers are getting off or on said street car, unless the vehicle has first come to a full stop," is discriminatory and therefore void, for the reason that, while placing a burden upon the drivers of vehicles, it affords no protection at all to the persons whom it is intended to safeguard, to-wit, persons who have just alighted from or are about to board a car, and serves a useless purpose so far as "passengers" are concerned, inasmuch as they are not within the zone of danger.

*C. D. Saviers*, for plaintiff in error.
*Stuart Bolin*, City Solicitor, contra.

KINKEAD, J.

This is a proceeding in error seeking to reverse a conviction under the new municipal ordinance requiring that all vehicles going in the same direction with street cars shall not pass while passengers are getting off or on the street cars until the vehicle has first come to a full stop.

It is claimed that the conviction was unwarranted because it is constitutionally invalid.

The ordinance is as follows:

"Section 30. All vehicles going in the same direction with street cars, within the corporation limits of the city, shall not

pass between the street car and curb while *passengers* are getting off or on said street cars, until the vehicle has first come to a full stop.''

This was intended as a police regulation for the convenience and safety of persons who are in fact pedestrians who have either just been passengers on a street car, or who are intending to become such and designed to protect them from injury from reckless or careless drivers.

The action of council was within express power conferred by Section 3632 of the General Code. This provision gives general power not only to regulate the use of vehicles, but the use of the streets as well.

Some courts urge with considerable force that whether a particular regulation falls within the scope of police power is a judicial question; but if it is, whether it is reasonable or not is not a judicial question. It is insisted and held by such courts that where the power is specifically conferred on a municipality, the question whether a regulation is reasonable can no more be raised as to effect its validity than it could be contended that the statute .conferring the power could be questioned. The claim is that the right asserted to declare a municipal ordinance invalid is limited to ordinances passed under the implied or incidental powers of the municipality, and that the discretion is not subject to judicial control unless the power violates some constitutional provision. 28 Cyc., 704; *Darlington* v. *Ward,* 48 S. C., 570 (38 L. R. A., 326) ; *Shea* v. *City,* 148 Ind., 14; *Railroad* v. *Harrington,* 131 Ind., 420; *State* v. *Mott,* 60 N. J. L., 413; *Railway* v. *Maysville,* 69 S. W., 728 (24 Ky. L. Rep., 615) ; *Chimene* v. *Baker,* 32 Tex. Cir. App., 520; *Hot Springs* v. *Curry,* 64 Ark., 152; *Com.* v. *Watson,* 109 Mass., 355.

A conception of the power as maintained by the Indiana decision cited, that you can no more question the power of the municipal authority when it is express than you can the statute conferring it, is untenable because it ignores the conceded power of the court to uphold constitutional rights.

And the other distinction drawn by some of the authorities cited that the discretion is not .subject to control, unless the

power violates some constitutional provision, makes the rule the same whether the municipal authority acts under express or incidental power so that it is a distinction without a difference.

The doctrine is tersely stated by Cooley:

"Municipal by-laws also must be reasonable. Whenever they appear not to be so, the court must, as a matter of law, declare them void. * * * So a by-law, to be reasonable, should be in harmony with the general principles of the common law." *Cooley Const. Lim.*, 245.

Ordinances passed in pursuance of this delegated power, which *reasonably* regulate the uses of the street and the traffic, are legislative acts and are entirely beyond the control of the judicial power. *Dillon Mun. Corp.*, Section 712-16, 1166; *Milhan* v. *Sharp*, 17 Barb., 438; *Wood* v. *Mears*, 12 Ind., 515 (74 Am. Dec., 222); *Indiana Ry. Co.* v. *Calvert*, 168 Ind., 321, 328; *Cooley Const. Lim.*, p. 252 (5th Ed.); *Milhan* v. *Sharp*, 17 Barb., 435; s. c., 28 Barb., 228, and 27 N. Y., 611.

Of course it is recognized that the municipal authorities are considered the best judges of the necessity of the regulation, as well as the extent to which it is advisable to go (*Hot Springs* v. *Curry*, 64 Ark., 152). So may it require in some instances special knowledge and experience to determine upon the regulation. What to some might seem unreasonable may in the opinion of others be what best promotes the interest of the public (*Commonwealth* v. *Watson*, 109 Mass., 355). Every presumption is drawn in favor of the reasonableness of the regulation, and that the authority has been actuated by pure motive. *Hot Springs* v. *Curry*, 64 Ark., 152; *Portland* v. *Montgomery*, 38 Ore., 215; *Ivins* v. *Trenton*, 38 Vroom (68 N. J. L.), 501; *Railroad* v. *Trenton*, 24 Vroom, 132; *Traction Co.* v. *Elizabeth*, 29 Vroom, 619.

Where the necessity for a particular regulation appears to be emphasized as by reason of a certain class of reckless vehicle drivers who seem not to recognize or observe the plain rights of others, and where it is augmented by their use in large numbers, and the safety of persons getting on or off of street cars at crowded places and narrow streets, the council may well conclude

that the particular regulation is the most intelligent solution of the problem, although another class of individuals may regard the regulation as too stringent and as unreasonable. It is not, however, for individuals, but for the public authorities to determine the question. Otherwise confusion and danger would result. *State* v. *Larrabee*, 104 Minn., 37.

The public safety and convenience of travelers may require regulation of this character. If the method of traveling pursued by certain classes of persons and the method of propelling a vehicle, of the size thereof, unless used in a reasonable manner under particular circumstances, will obviously endanger the public safety of another class of persons lawfully using a portion of the street, the municipal council may well conclude that regulation is necessary, and it certainly is reasonable and proper within the legitimate powers to regulate the manner in which vehicles shall be run so as to insure the safety of those lawfully using the street (Ideas taken from 2 Cushing, 562, and stated with reference to this case).

The judicial power is by fundamental law made the final arbiter of the question whether the legislative act infringes private right. It is not concerned with mere difference of opinion which may exist between classes on a question of mere reasonableness which does not come within the pale of constitutional right.

Equality of rights and privileges is the aim of the law; and if special privileges are granted, or special burdens or restrictions imposed in any case, it must be presumed that the Legislature designed to depart as little as possible from this fundamental maxim of government. The state, it is to be presumed, has no favors to bestow, and designs to inflict no arbitrary deprivation of rights. *Cooley Const. Lim.*, 485.

Ordinances and by-laws contravening constitutional requirements of equality and uniformity of legislation are void for such discrimination. 28 *Cyc.*, 767.

The question depends upon the relative rights of drivers of vehicles and of pedestrians in the streets, and of persons boarding and alighting from the street cars.

The proper meaning and construction of the ordinance according to the generally accepted meaning of language is, that all vehicles going in the same direction with street cars shall not pass the car while *passengers* are getting on or off the cars without first having come to a full stop.   The driver of the vehicle is not required, nor can it be reasonably expected that he shall *stand still* and *wait* until the *passengers* have all gotten on or off or until the *street is clear*, but, he may proceed as soon as he comes to a full stop.   This is so because it only applies to *passengers*, who are *not pedestrians*.   It would seem to be senseless and useless to require a vehicle to stop, or stop and stand still until all the persons get on or off a car, *when there abundant space and room* for the vehicle to pass safely by, with due regard to the rights of persons on the street who are not passengers, but *pedestrians* who have just alighted from the car.

Under the ordinance it is not within the right of any pedestrian who intends to become a passenger to unnecessarily stand in the street so as to obstruct the passage of the vehicle and the general traffic as well.   And this ordinance confers no such right. Drivers are not required by the ordinance to be kept standing under such circumstances, but they have the right, and it is their duty in the interest of the welfare of general traffic and to avoid obstruction of the street to proceed upon giving due warning and observing care to avoid injury.

The ordinance, in the judgment of the court, unfortunately fails to express the real purpose, which was to avoid injury to pedestrians who are about to become or who have been passengers. as they are going to or from the car.

The undoubted purpose of the ordinance is to require drivers of vehicles to have such control thereof as will enable them to avoid injury to *persons* who are in the street between a street car, which has just stopped for them to become passengers, or who have just alighted from a street car upon the street.

We are to decide the meaning and purport of the ordinance and its applicability by its grammatical sense and meaning, which becomes the meaning in a legal scense.

Webster *defines passenger* as one who travels by some established conveyance; a passer-through or passer-by; one who is

making a passage (*Penn. R. Co.* v. *Price*, 96 Pa. St., 256). A passer-through or passer-by, wayfarer, traveler, according to Webster, is now rare except in foot passengers. And it could not possibly have been intended to be so used in such sense in the ordinance because it is made to refer to passengers getting on or off a street car. So that no other sense could have been intended except what is meant by a passenger in a legal sense of the word, which is one who travels in some public conveyance by virtue of a contract, express or implied, with the carrier, as the payment of fare, or that which is accepted as an equivalent. *Bricker* v. *Phil. R. Co.*, 132 Pa. St., 1 (19 Am. St., 585); *Fitzgibbon* v. *Ry. Co.*, 108 Iowa, 614; *Travelers Ins. Co.* v. *Austin*, 116 Ga., 264 (94 Am. St., 125). The consent of the carrier is essential to constitute the person a passenger. *Higley* v. *Gilner*, 3 Mont., 90 (35 Am. Rep., 450).

The word ordinarily conveys the idea of one who, for hire, has taken a place in a public conveyance for the purpose of being carried. *De La Vergne, etc., Co.* v. *McLersth*, 60 Ill. App., 529, 534.

The nature of the conveyance, its mode of operation, manner and means of receiving and discharging passengers, must necessarily be an important factor in determining when the relation commences and ceases.

The familiar rules and doctrines applying to commercial or steam railroads and street railways by reason of their radical distinction as to means of receiving and discharging passengers will concededly play an important factor in deciding when a person becomes or ceases to be a passenger. Street railways having no station or depots as do steam roads, the rule appertaining to the latter that when one has gone upon the station of the steam road and purchased a ticket, he thereby becomes a passenger, can not have any application to street railroads. The latter receive their passengers from and discharge them upon the public thoroughfare.

To create the relation of carrier and passenger there must be an offer to become a passenger by the latter and an acceptance by the former (*Schaefler* v. *Railway*, 128 Mo., 64). So it is held

that a foot traveler who, intending to take an approaching street car, steps out upon a cross-walk signalling the car which is answered by the latter, is struck by the car which is unexpectedly deflected to a sidetrack on which he is standing, is not a passenger (*Donovan* v. *Street Ry. Co.*, 65 Conn., 201; 29 L. R. A., 297). So a foot traveler on a highway who is approaching and intending to board a street car, which in response to a signal from him has stopped to receive him, is not a passenger on the car before he reaches it, and until he begins to enter the car. *Douchemin* v. *Boston El. Ry. Co.*, 186 Mass., 353.

The relation of passenger and carrier being contractual does not arise out of the fact that a person runs (or walks) toward a moving car to get on board (*Chicago Traction Co.* v. *O'Brien*, 219 Ill., 303). So one in a street, although awaiting the arrival of a street car, is not a passenger, because the street is in no sense a passenger station. *Nillis, St. Rys.*, Section 259; *Booth, St. Rys.*, Section 326.

One who steps from a street railway to the street is not upon the premises of the railway company, but is upon a public place where he has the same rights with every other occupier, and over which the company has no control. *Creamer* v. *West End Street Ry. Co.*, 156 Mass., 320 (32 Am. St., 456).

I can see no other rational construction which may be placed upon the ordinance. As so construed it does not in terms nor effect tend to protect the welfare of pedestrians in the streets who have been or intend to become passengers. On the contrary it is legislation in the interest of persons who are at the time when they are classified as passengers who do not need such regulation. It is discriminatory regulation against all drivers of vehicles under circumstances which is unnecessary and unreasonable. It also discriminates in favor of passengers who do not need the regulation and against *pedestrians* who have been or intend to be passengers, and does not tend to remedy the evil which no doubt was the object.

Under such circumstances it unnecessarily creates an evil in congestion of traffic. Many claims in respect to this are set forth in the brief of counsel, as well as relating unnecessary and un-

reasonable hardships imposed upon certain classes of drivers of vehicles.

I would not have it understood that anything which may be stated in this decision is directed towards this legislation so construed as to make it applicable to pedestrians about to take a car or on leaving one which is designed to guard or protect their welfare. Such a purpose is a commendable one, one which would make it incumbent upon court to uphold if possible it being the purpose and aim of courts in all cases to sustain legislation.

But this by-law, construed as it has been, destroys the constitutional principle of equality of right.

The rights of drivers of vehicles, of street cars and of pedestrians are equal. The Supreme Court has again just announced the principle of equality in *Steubenville & W. Traction Co.* v. *Brandon, Admr.*, 10 Ohio Law Rep., 503, that "the driver of a horse and wagon at such street crossing has equal rights with the company in the street and to use the crossing," etc.

"Automobiles as a means of conveyance have equal rights in the streets with other vehicles and pedestrians, and the equality of right requires that the driver of an automobile and a pedestrian shall both be cautious in a street to avoid collision." *Teverousky* v. *Garage M. Co.*, 8 Ohio Law Rep., 401.

"As a matter of law, it is as much the duty of the vehicle to keep out of the way of the footman, and especially so at crossings, as it is for the latter to escape being run over, giving due consideration to the greater difficulty of guiding and arresting of the vehicle. There is no priority of right, so that the right of neither is exclusive." *Kinkead on Torts*, Section 288; *Cincinnati Street Ry.* v. *Snell*, 54 O. S., 205.

A pedestrian must observe ordinary care, must use his senses, his eyes, his ears, and must do that which is reasonable under the circumstances to avoid injury to himself, must govern and control this action.

The testimony in the case on the part of the prosecution shows that the plaintiff in error was driving an automobile south on the west side of High street, at the intersection of Gay and High, at which point a street car had stopped; that he passed the car

without stopping at which time "people were getting on and off the car, that is at the time he passed it."

The evidence shows that the conviction is made to rest upon the fact that passengers were getting on and off the car, which is found to be an unjust and unnecessary discrimination and is therefore an excess of power conferred by statute, and the ordinance is invalid.

I think the court might have been justified in upholding the ordinance in so far as it applied to passengers getting off a car because the tendency would be toward protecting them from danger after alighting and becoming pedestrians.

But there is no regulatory purpose to be subserved for the welfare of any one who is boarding a car in the act of becoming a passenger, and then the ordinance does not accomplish the purpose sought.

Consequently the order of the court is that the judgment of the police court is reversed and the proceedings dismissed.